Opinion issued November 10, 2004



In The

# Court of Appeals

For The

# First District of Texas

_____

NO. 01-03-00783-CR

_____

MIKE MENDOZA, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from 262nd District Court
Harris County, Texas
Trial Court Cause No. 952290

## MEMORANDUM OPINION

Appellant, Michael Mendoza, Jr., was convicted of murder by a jury. The trial

court assessed punishment at life in prison. In two points of error, appellant contends the evidence is legally and factually insufficient to support his conviction.

We affirm.

## Background

On the evening of January 18, 2003, complainant, Isaac Benavides, and his brother, Frank Moreno, went to a gathering at the home of Gerardo Garcia to watch a boxing match on television. After the match, people congregated inside and outside the house talking and drinking. In the early morning hours, five men arrived at the residence in two vehicles. These men were appellant, appellant's brother Josue Mendoz, and three friends, Richard Espinoza, Sam Alvarez, and Reynaldo Rodriguez. Jessica Martinez also joined the gathering.

After Martinez arrived, an argument of uncertain origins broke out in the crowd of men gathered in the front yard of the residence. The conflict evolved with the complainant being beaten by appellant, Josue, Espinoza, and possibly Rodriguez. Neither Moreno nor Garcia could come to the complainant's aid during the beating because Alvarez was holding the crowd at bay with a handgun. The conflict culminated with the complainant being repeatedly stabbed in the right side of his chest and abdomen, resulting in his death.

After the stabbing, appellant, Josue, Espinoza, Rodriguez, and Alvarez quickly

2

left the scene before the police arrived. Following an investigation, the police developed appellant as the person who had stabbed the complainant. Appellant was ultimately charged by indictment with murder.

The State presented numerous witnesses at trial. Jessica Martinez testified that, when she arrived at the Garcia residence, appellant, Josue, Espinoza, Rodriguez, and Alvarez were in the yard. Martinez recalled that appellant shook her hand and spoke to her when she arrived. Martinez stated that she went into the house and did not realize that an altercation was taking place outside until she left the house and saw a man waving a gun. Being frightened, Martinez went back inside and hid in a bathroom. Martinez testified that when she went back outside, she saw appellant, Josue, Espinoza, Rodriguez, and Alvarez running to their vehicles to leave. She did not see the complainant being beaten or stabbed.

When the five men arrived at the house, Frank Moreno testified that he recognized only one of them: Reynaldo Rodriguez. When he heard an argument beginning, Moreno walked the children who were present inside the house. Moreno heard a bottle break and fighting outside. Moreno testified that, when he went back outside, he saw three men beating the complainant. Moreno tried to help his brother but was held at gunpoint by a man he later identified as Alvarez. Moreno told the jury that he saw two men punching his brother in the face and upper body. He saw

3

a third man, whom he could not identify, making a stabbing motion on his brother's right side. After he saw this motion, Moreno saw his brother "drop." After the five men left, Moreno ran to his brother, lifted his brother's shirt, and saw "puncture wounds" in his brother's rib cage and abdomen.

Gerardo Garcia testified that he left his house after the boxing match to pick up his wife. When he returned, he saw appellant, Josue, Espinoza, Rodriguez, and Alvarez in his yard. Soon after, an argument developed between Garcia and Espinoza. Garcia saw Espinoza throw a punch at the complainant. Espinoza, appellant, and Josue then "jumped" the complainant and began beating him. At the same time, Garcia stated that Alvarez was pointing a gun at him and Moreno. Although all three men were "jabbing" the complainant, Garcia testified that he saw appellant making a "jabbing" motion by the complainant's ribs while the other two men were beating the complainant in the face. Although he never saw a knife, Garcia described the motion used by appellant as a "stabbing jab."

Rodriguez recalled at trial that he saw appellant and Josue in a fist fight with the complainant. He stated that the complainant had started the fight by kicking Josue in the chest and that, at one point, before the fight, the complainant had a gun. Rodriguez stated that he did not see a knife or any type of stabbing motion used on the complainant. After the complainant fell, Rodriguez left the Garcia residence in

4

a vehicle with Espinoza and Alvarez. Appellant and Josue left in a separate vehicle. After driving about five blocks, both vehicles pulled over. Rodriguez testified that he and Alvarez walked over to the other vehicle and spoke to appellant through the passenger-side window. At that point, Rodriguez realized that appellant had stabbed the complainant when he saw appellant wiping the knife on his shirt. According to Rodriguez, appellant was angry. When the men asked appellant why he had stabbed the complainant, appellant stated that he did not know why. Rodriguez then got into the car with appellant and Josue. Rodriguez saw appellant throw the knife out of the car. Rodriguez contacted the police and told them the location where appellant had thrown the knife.

Detective C. Zucha testified that he was contacted by Rodriguez the day after the complainant was killed. Rodriguez told Zucha where appellant had thrown the knife. Based on the information provided by Rodriguez, the police recovered the knife. The State presented testimony that DNA testing showed that blood found on the recovered knife was that of the complainant.

Sam Alvarez also testified for the State regarding the events surrounding the complainant's killing. Alvarez admitted to "waving" a gun at Moreno and Garcia but stated that he had felt threatened by the crowd that had gathered during the fight. The record reflected that Alvarez was wearing an orange prisoner's jumpsuit at trial.

5

Alvarez told the jury that he had been charged with aggravated assault with a deadly weapon but that the district attorney's office reduced the charge to a "Class A assault" in exchange for Alvarez's testimony.

Alvarez recalled that he saw the complainant pointing a gun at Espinoza. Alvarez took the gun from the complainant and a fist fight ensued between the complainant and Espinoza. Then, appellant and Josue joined the fight. Alvarez saw that the complainant had his back to a car and that the three other men—appellant, Josue, and Espinoza—were "beating on him." Alvarez testified that he saw appellant use a jabbing motion on the complainant.

Alvarez stated that he left in a vehicle with Rodriguez and Espinoza after the complainant fell to the ground. Appellant and Josue followed in another vehicle. A couple of blocks from the scene, Alvarez told Espinoza to stop. The vehicle with appellant and Josue also pulled over. Alvarez went to the open passenger-side window of appellant's vehicle and saw appellant taking off his shirt. Alvarez also saw that appellant had a knife. Alvarez then observed appellant cleaning blood from the knife with the shirt. When Alvarez asked appellant why he had stabbed the complainant, appellant did not answer but shook his head.

Alvarez testified that, as part of his agreement with the State to reduce the charges against him, Alvarez agreed to "wear a wire" and record a conversation with

appellant. The State introduced an audiotape of the conversation into evidence. The tape was played for the jury.

During the taped conversation, Alvarez told appellant that he had heard that the complainant was stabbed 38 times. Appellant stated that he did not stab the complainant 38 times but had "hit" the complainant about four times.

The State also introduced the complainant's autopsy report into evidence and elicited the testimony of assistant medical examiner Dr. Dwayne Wolf. This evidence showed that the complainant had died as a result of the stab wounds that he had received to the right side of his chest and abdomen.

### Appellant's Issues

In his initial statement of the issues, appellant contends that the trial court erred in denying his motion for directed verdict because the evidence was legally and factually insufficient to support his murder conviction. We review a complaint that the trial court erred in denying a motion for instructed verdict as a challenge to the *legal*, not factual, sufficiency of the evidence. *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996) (citing *Cook v. State*, 858 S.W.2d 467, 470 (Tex. Crim. App. 1993)); *see also Youens v. State*, 988 S.W.2d 404, 407 (Tex. App.—Houston [1st Dist.] 1999, no pet.). However, we look to an appellant's argument to determine the nature of his complaints, including any subsidiary issues, rather than the points

7

of error alone. *Sanchez v. State*, 98 S.W.3d 349, 355 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *see also* TEX. R. APP. P. 38.1(e) ("The statement of an issue or point will be treated as covering every subsidiary question that is fairly included.").

In support of his first point of error, appellant argues that, absent the testimony of the "accomplice" witnesses—Reynaldo Rodriguez and Sam Alvarez—the remaining evidence is legally insufficient to support his murder conviction. Appellant does not contend that the evidence is legally insufficient to support his conviction when Rodriguez's and Alvarez's testimony is taken into consideration. Rather, appellant contends that *absent* the accomplice witness testimony, the evidence is legally insufficient. Given appellant's substantive argument, we construe appellant's first point of error to be a challenge that the State failed to corroborate the accomplice-witness testimony.[1] Thus, only if we conclude that the State did not offer

---

[1] It is unclear whether appellant considers Rodriguez and Alvarez to be accomplices as a matter of law or as a matter of fact. In any event, appellant did not request an instruction on the accomplice-witness rule and none was included in the jury charge. The Court of Criminal Appeals has implied this failure results in waiver of the issue. *See Hernandez v. State*, 939 S.W.2d 173, 180 n. 2 (Tex. Crim. App. 1997) (questioning appellate court's review of accomplice witness testimony in the absence of such instruction and citing *Boozer v. State*, 717 S.W.2d 608, 610 (Tex. Crim. App. 1984) (holding sufficiency of evidence is to be measured by charge that was given) *overruled by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)). Because *Boozer* has been expressly overruled by *Malik*, and because the Court of Criminal Appeals in *Hernandez* did not overrule its opinion in *Hammonds v. State*, 316 S.W.2d 423, 424 (Tex. Crim. App. 1958) (holding where no accomplice

8

sufficient corroborating evidence regarding the "accomplice" witness testimony need we address whether the remaining evidence was legally sufficient.

In support of his second point of error, appellant cites the testimony of several witnesses as weighing against his conviction. Fairly considering the argument supporting appellant's second point of error, we construe that point as a challenge to the factual sufficiency of the evidence. *See* TEX. R. APP. P. 38.1(e); *Sanchez*, 98 S.W.3d at 355.

### Corroboration of Accomplice–Witness Testimony

Code of Criminal Procedure article 38.14 provides, "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979). In assessing the sufficiency of corroborative evidence, we eliminate the testimony of the accomplice witness from consideration and examine the testimony of other witnesses to ascertain whether the non-accomplice evidence tends to connect the accused with the commission of the

---

witness charge was requested or given, a reviewing court, "in passing upon the sufficiency of the evidence, must treat the testimony of [an accomplice] as that of an accomplice witness and find sufficient evidence from other sources tending to connect appellant with the commission of the offense"), we will apply the accomplice-witness rule in this case.

9

offense. *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997). "The non-accomplice evidence need not be sufficient itself to establish the accused's guilt beyond a reasonable doubt." *Id.* The law only requires that some non-accomplice evidence *tends to connect* the accused to the commission of the offense. *Id.* All the facts and circumstances in the case, both factual and circumstantial, may be considered when determining whether the accomplice testimony was properly corroborated. *See Reed v. State*, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988).

In the present case, the State produced non-accomplice testimony that an offense was committed, that appellant was present during its commission, that appellant participated in the beating of the complainant, and that at least one non-accomplice witness, Gerardo Garcia, saw appellant using a stabbing motion in the region of the complainant's body that received the fatal stab wounds.

Although appellant claims that the non-accomplice evidence is both legally and factually insufficient to sustain his conviction, the Court of Criminal Appeals has declined to impose the legal and factual sufficiency standards on a review of accomplice witness testimony under article 38.14. *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). "The accomplice-witness rule is a statutorily imposed sufficiency review and is not derived from the federal or state constitutional principles that otherwise define legal and factual sufficiency review." *Id.* at 462-63.

10

The burden established by the Legislature is that other evidence tend to connect the defendant with the offense, and the State met that burden here. *See id.* at 463. Having reviewed the circumstances of the offense and the testimony from the non-accomplices, we conclude that sufficient non-accomplice evidence tends to connect appellant to the commission of the offense, as required by article 38.14. *See Hernandez*, 939 S.W.2d at 178. Because appellant only contends that the evidence was legally insufficient without the accomplice testimony, we need not make the determination whether the evidence was legally sufficient when all the evidence is considered, including the accomplice-witness testimony.

We overrule appellant's first point of error.

## Factual Sufficiency of the Evidence

In his second point of error, appellant contends that the evidence is factually insufficient to support his conviction. A person commits the offense of murder if he intentionally or knowingly causes the death of an individual, or if he intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PEN. CODE ANN. § 19.02(b)(1), (2) (Vernon 2003).

We begin the factual sufficiency review with the presumption that the evidence supporting the jury's verdict is legally sufficient. *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). We view all of the evidence in a neutral light, and we

11

will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Escamilla v. State*, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004) (citing *Zuniga v. State*, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004)). We must defer appropriately to the fact-finder to avoid substituting our judgment for its judgment. *Zuniga*, 144 S.W.3d at 482. Our evaluation may not intrude upon the fact-finder's role as the sole judge of the weight and credibility accorded any witness's testimony. *See Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). The fact-finder alone determines what weight to contradictory testimonial evidence because that question depends on how the fact-finder evaluates credibility and demeanor. *Id.* at 409. As the determiner of the credibility of the witnesses, the fact-finder may choose to believe all, some, or none of the testimony presented. *Id.* at 407.

In conducting a factual-sufficiency review, we must discuss the evidence that, according to appellant, most undermines the jury's verdict. *See Sims v. State,* 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Appellant cites the following as undermining the jury's guilty verdict in this case: (1) the testimony of the State's witnesses that they did not see a knife used during the fist fight, or specifically that they did not see appellant wield a knife when he was hitting the complainant; (2)

Frank Moreno's testimony that, during the fight, it was dark, he did not have a good view, and could not positively identify the person he saw using the stabbing motion on the right side of the complainant; (3) the testimony that witnesses saw appellant using "stabbing" and "jabbing" motions during the fight, which could suggest that appellant was simply punching the complainant, not stabbing him; (4) the lack of physical evidence, such as DNA or fingerprints, linking appellant to the knife recovered by the police; (5) the only DNA recovered from the knife was from the blood of the complainant, suggesting that the knife belonged to the complainant and failing to circumstantially link appellant to the offense; and (6) the audiotaped conversation between Alvarez and appellant in which appellant states that he "hit" the complainant four times and "could not say" why he killed the complainant, suggesting that appellant merely punched the complainant but did not stab him.

The evidence that is favorable to appellant must be viewed in the context of the entire record and not in isolation. As set forth in the background section of this opinion, the State presented evidence showing that witnesses (i.e., Garcia and Rodriguez) saw appellant using stabbing motions on the right side of the complainant's torso. The autopsy and medical examiner evidence showed that the complainant was stabbed eight times in his right chest and abdomen and that the complainant died from these injuries. The witnesses who saw the "stabbing" motion

13

used by appellant distinguished this motion from the punching and hitting motion used by Josue and Espinoza when they were beating the complainant in his upper body and face. From such evidence, the jury could have reasonably inferred that appellant had not only punched the complainant, but had stabbed him in the right side, resulting in his death.

Although the knife recovered by the police had no physical evidence linking appellant to the weapon, Alvarez and Rodriguez testified that they saw appellant with a knife immediately following the stabbing while he sat in his brother's car a few blocks from the crime scene. At that time, both men saw appellant clean the knife with his shirt. Shortly thereafter, Rodriguez saw appellant throw the knife from the car. Rodriguez told Detective Zucha where appellant had disposed of the knife. The police later recovered a knife from that location which had the complainant's blood on it. This evidence would support an inference by the jury that the knife recovered by police was the knife appellant had in his possession in the vehicle and that the knife had been used to stab the complainant.

Appellant correctly points out that on the audiotape played for the jury he stated that he had "hit" the complainant four times. However, this statement was made in response to an allegation that the complainant had been stabbed 38 times. Appellant told Alvarez that he had not stabbed the complainant 38 times, rather, he

14

had "hit" him only four times. When viewed in context, it would be reasonable for the jury to infer that "hit" meant stabbed.

We hold that the jury's verdict in this case is not irrational, or clearly wrong and manifestly unjust, or contrary to evidence so strong that the standard of proof beyond a reasonable doubt could not have been met. *See Escamilla v. State*, 143 S.W.3d at 817.

We overrule appellant's second point of error.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Nuchia, Hanks, and Higley.

Do not publish. TEX. R. APP. P. 47.2(b).

15



# Court of Appeals

# First District of Texas

## JUDGMENT

MIKE MENDOZA, JR., Appellant

NO. 01-03-00783-CR      V.

THE STATE OF TEXAS, Appellee

Appeal from the 262nd District Court of Harris County, Texas. (Tr. Ct. No. 952290). Panel consists of Justices Nuchia, Hanks, and Higley. Opinion delivered by Justice Higley.

The cause heard today by the Court is an appeal from the judgment signed by the court below on July 23, 2003. After submitting the cause and inspecting the record of the court below, it is the opinion of this Court that there was no reversible error in the judgment. It is, therefore, **CONSIDERED, ADJUDGED,** and **ORDERED** that the judgment of the court below be, in all things, **affirmed.**

It is further **ORDERED** that this decision be certified below for observance.

Judgment rendered by panel consisting of Justices Nuchia, Hanks, and Higley.

Judgment rendered November 10, 2004.