**Hugo Alberto HERNANDEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 010–96.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 5, 1997.

---

**174**

Walter J. Pink, Houston, for appellant.

Robert H. Moore, Asst. District Attorney, Brownsville, Matthew Paul, State's Atty., Austin, for State.

*OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW*

MEYERS, Judge.

Appellant was convicted of murder and sentenced to thirty-five years imprisonment.[1] The Thirteenth Court of Appeals reversed appellant's conviction and ordered an acquittal after finding the evidence insufficient to corroborate the accomplice witness testimony. *Hernandez v. State,* 907 S.W.2d 654 (Tex.App.—Corpus Christi 1995). We granted the State's petition for discretionary review to determine whether the court of appeals erred in misinterpreting the quality

1. This opinion was originally prepared by Judge Frank Maloney prior to his leaving the Court.

and quantum of proof necessary to corroborate accomplice testimony in a murder case.[2]

We adopt the court of appeals' recitation of the facts surrounding the accomplice witness testimony:

The record shows that [on] April [6th] 1988, the bullet-riddled body of [the victim] was found alongside a Cameron County Highway [sic]. Shortly thereafter, the Cameron County grand jury jointly indicted Martin Flores and appellant for the murder. Appellant failed to appear for arraignment, but Flores was tried and convicted in August 1988. Appellant was captured four years later and tried in January 1993. At appellant's trial, the State called accomplice Flores and a number of non-accomplice witnesses.

Flores, the accomplice, testified that in 1988 he had been convicted of [the victim's] murder and sentenced to twenty-five years in prison. He was released on parole in February 1992. He testified that he did not want to testify at appellant's trial but appeared because he was subpoenaed. He did not remember witnesses testifying during his own trial, nor did he remember evidence being presented. He identified appellant in the courtroom. He testified that [the victim] had been a mechanic who lived next to him on Elena Street in Brownsville. He could not remember how long he had known [the victim] or when [the victim] became his neighbor. Flores remembered that he had met appellant in Matamoros but could not remember when. He could not remember where appellant lived. Flores could not remember getting together with appellant and [the victim]. Flores testified that he could not remember "what happened" be-

cause he had nerve problems when he was in prison. He could not remember the last time he saw [the victim]. He did not remember being in court or testifying at his own trial in his own defense. After the prosecutor showed him a transcript of what purported to be his prior testimony, Flores remembered who his attorney had been, but he still did not remember testifying. The prosecutor showed Flores three prior statements Flores purportedly made. Flores looked at them but could not remember their contents or signing them. The State passed the witness, and appellant's counsel asked Flores no questions.

John Corr testified that he was the court reporter during Flores's 1988 trial and that Flores had testified under oath at that trial. Over appellant's objection, the trial court permitted the State to read Flores's former testimony to the jury. [footnote omitted]

In that testimony, Flores testified how he came to know [the victim]. They had a close relationship, like brothers. Flores only knew appellant for three months. On the day of the killing, Flores went to [the victim's] house to help him fix a van. About 7:30 p.m., appellant showed up with some beer. After a while, they needed more beer, so Flores left with appellant to get some. While they were out, they went to "Chato's place" to check on two trucks appellant was having painted. They returned to [the victim's] house, then about 9:30 went to get some videos. They then came back to [the victim's] around 10:15 but all three then left to go to a bar.

When they got to the bar, [the victim] and appellant greeted different friends.

---

**2.** In the instant case, appellant failed to request an instruction on the accomplice witness rule and none was included in the jury charge. In light of this, it is questionable whether the court of appeals should have evaluated the sufficiency of the evidence under the accomplice witness rule. *See Boozer v. State,* 717 S.W.2d 608, 610 (Tex.Crim.App.1984). In *Boozer,* we noted that the sufficiency of the evidence is to be measured by the charge *that was given. Id.* (emphasis in original) The court of appeals, however, did not apply *Boozer,* and instead relied upon this Court's opinion in *Hammonds v. State,* 166 Tex. Crim. 499, 316 S.W.2d 423, 424 (1958). In

*Hammonds* we stated that where no accomplice witness charge was requested or given, a reviewing court, "in passing upon the sufficiency of the evidence, must treat the testimony of [an accomplice] as that of an accomplice witness and find sufficient evidence from other sources tending to connect appellant with the commission of the offense; . . . ." *Id.;* 316 S.W.2d at 424 (citing *Pitts v. State,* 85 Tex.Crim. 14, 210 S.W. 199 (1919)). Neither party takes issue with the court of appeals' application of *Hammonds,* and accordingly we review the court of appeals' application of the accomplice witness rule.

At some point, appellant told [the victim] that one of the men owed appellant $36,-000. When [the victim] told appellant to "tell him to pay you," appellant said he did not want to be paid. Appellant said he just wanted to kill him. The three then left the bar and cruised around during which time appellant gave the victim a pistol. They agreed they were going to go back and kill the man. While Flores and appellant waited in the car, [the victim], leaving the gun in the car, went into the bar to see if the man was there. [The victim] was in the bar about five minutes when appellant and Flores saw the man they seemed to be waiting for leaving the bar. [The victim] then came out and said the man was not in the bar. Appellant told [the victim] that they had seen the man come out, but [the victim] said he was not in there. Appellant and [the victim] then argued. Appellant then started the car and they headed for Boca Chica. Soon they stopped, apparently to urinate, and got out. Appellant had his 12–gauge shotgun and looked at [the victim], who asked if appellant was "going to give it to" him. Appellant called [the victim] a "son of a bitch" and a "snitch" and then shot [the victim] twice with the shotgun. Appellant then pointed his shotgun at Flores. Instead of shooting, appellant handed Flores a pistol and told him to shoot [the victim]. Flores fired two or three times at a shadow, really not wanting to hit [the victim]. Appellant then took the gun from Flores, and they left for Matamoros. Later, Flores realized he had lost one of his sandals at the murder scene. Flores did not think he killed [the victim] because [the victim] was already down and would not move. Flores would not have fired if appellant had not forced him.

■■■ Tex.Code Crim. Proc. Ann. art. 38.14, the accomplice witness rule provides:

A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

The test for weighing the sufficiency of corroborative evidence is to eliminate from consideration the testimony of the accomplice witness and then examine the testimony of other witnesses to ascertain if there is evidence which tends to connect the accused with the commission of the offense. *Reed v. State*, 744 S.W.2d 112, 125 (Tex.Crim.App. 1988). The non-accomplice evidence need not be sufficient in itself to establish the accused's guilt beyond a reasonable doubt. *Id.* at 126. Nor is it necessary for the non-accomplice evidence to directly link the accused to the commission of the offense. *Reynolds v. State*, 489 S.W.2d 866, 872 (Tex. Crim.App.1972). The accomplice witness rule is satisfied if there is *some* non-accomplice evidence which *tends* to connect the accused to the commission of the offense alleged in the indictment. *Gill v. State*, 873 S.W.2d 45, 48 (Tex.Crim.App.1994) (*citing Gosch v. State*, 829 S.W.2d 775, 777 (Tex. Crim.App.1991), *cert. denied*, 509 U.S. 922, 113 S.Ct. 3035, 125 L.Ed.2d 722 (1993))(emphasis in original); *Cox v. State*, 830 S.W.2d 609, 611 (Tex.Crim.App.1992).

■■■ The court of appeals found that the non-accomplice testimony viewed most favorably to the jury's verdict showed

(1) appellant and Flores were with [the victim] approximately two hours before the killing, (2) two persons killed the victim, (3) appellant departed without explanation after [the victim] was killed, (4) in the past, appellant possessed one type of weapon (pump shotgun) used to kill [the victim], and (5) appellant drank Miller Lite beer and a can of that type of beer was found by [the victim's] body.

*Hernandez*, 907 S.W.2d at 658. In concluding that the non-accomplice evidence was insufficient to connect appellant to the offense, the court of appeals relied on this Court's opinion in *Cruz v. State*, 690 S.W.2d 246 (Tex.Crim.App.1985), focusing on the following language:

[p]roof that an accused was present at or near the scene of a crime, when coupled with other suspicious circumstances, including subsequent flight, may tend to connect the accused to the commission of the offense.... The fact that [the defendant]

lived [on the victim's property] and had gone away around the time of the murder is of some significance, but, by itself, is not sufficient to connect appellant to the murder.

*Hernandez,* 907 S.W.2d at 658 (*citing Cruz,* 690 S.W.2d at 250–51).[3] Purporting to follow *Cruz,* the court of appeals held that evidence that appellant was with the accomplice the night of the offense, that appellant had previously possessed a weapon like that of the murder weapon, that the victim might have been killed by two persons, that the brand of beer appellant was seen drinking on the night of the murder was found by the victim, and that appellant disappeared without explanation following the offense amounted to suspicious circumstances only but did not tend to connect appellant to the commission of the offense.

The State claims the court of appeals' reliance on *Cruz* is misplaced because in that case there was no evidence that tended to place the defendant at the crime scene. We agree that the court's reliance on *Cruz* is misplaced, although not for the precise reason the State asserts. In reaching its holding, the court of appeals failed to take into account facts which distinguish *Cruz* from the instant case and ignored caselaw which speaks directly to the significance of such facts.[4] *Munoz v. State,* 853 S.W.2d 558, 559 (Tex.Crim.App.1993) (noting each case must be considered on its own facts and circumstances).

Evaluating the evidence in *Cruz,* we noted the following:

> No connection was shown between the rifle and pistol [the defendant] had been seen with at some, unspecified time prior to the murder, and the weapons used to kill [the victim]. The State never even proved the caliber of the murder weapons or bullets.[5] Similarly, the State does not explain the significance of the discovery of the Christmas gift in the truck, in connecting [the defendant] to the murder.... Appellant was never linked to the truck, and the discovery of the truck and the Christmas gift was never connected to the murder.

*Id.* at 250. We also pointed out that the testimony only narrowed the time of death between December 24th and December 27th. *Id.* No one testified as to when they last saw the defendant on the victim's property or with the accomplice. Since the defendant lived on the victim's property, just 200 yards from the victim's house, his presence there was of limited significance. We stated that there was essentially nothing tending to connect the defendant to the offense apart from the accomplice witness testimony; the fact that the defendant lived near the victim and went away following the murder did not tend to connect the defendant to the offense. *Id.* at 251.

■■■ In relying on *Cruz,* the court of appeals was obligated to consider all circumstances of this case, both obvious and unique,

---

**3.** The victim in *Cruz* was found shot to death in his home. The defendant lived in a shack on the victim's property. According to the accomplice, the defendant said he was going to kill the victim because he had propositioned the defendant's wife. *Cruz,* 690 S.W.2d at 248. On Christmas eve, the defendant and the accomplice shot the victim. *Id.* Within two hours of the killing, the defendant, his wife, and the accomplice departed from the victim's property in the victim's truck. *Id.* The accomplice also testified that the defendant always carried a .22 caliber rifle. *Id.* The non-accomplice evidence showed that the victim suffered from wounds inflicted by a revolver and a rifle. *Id.* at 250. A friend of the victim's said that he had seen the defendant with a rifle and a pistol on occasion. *Id.* at 249. He further testified that he visited with the victim until 4:00 p.m. on Christmas eve and that when he stopped by the victim's place at 10:00 a.m. the next day, he noticed that the shack was empty. *Id.* at 248. The victim's truck was found abandoned and

inside it was a Christmas gift to the victim from the defendant, his wife, and the accomplice. *Id.* at 249.

**4.** *Arcila v. State,* 834 S.W.2d 357 (Tex.Crim.App. 1992), is not implicated here. While we are bound by the court of appeals' factual determinations thereunder, *Arcila* is not a bar where the court of appeals failed to fully consider all the facts and did not apply controlling caselaw.

**5.** The State filed a motion for rehearing, contending that the Court's opinion was incorrect in stating that the caliber of the murder weapon was not proved. *Cruz,* 690 S.W.2d at 251. We agreed that the evidence showed the victim died as a result of wounds caused by a .22 caliber weapon, but, in denying the motion, we determined our original opinion was not affected by such evidence. *Id.*

that might set it apart from *Cruz. See Etheredge v. State,* 542 S.W.2d 148, 150 (Tex.Crim. App.1976) (stating each case must be considered on its own facts). Further, the court was required to attach appropriate legal significance to those circumstances. In contrast to *Cruz,* here there was non-accomplice testimony that tended to connect appellant to the murder. As the court of appeals stated in its opinion, there was non-accomplice evidence that appellant was with the accomplice on the night of the offense about two hours before the murder. Teresa Reyes, the victim's wife, testified that her husband told her he was with Flores and appellant on the night of the murder and that they were going drinking. Witnesses Richard Cisneros and Andres Salgado also testified that they saw appellant with Flores around 8:00 that night. Evidence that appellant was in the company of the accomplice at or near the time or place of a crime is proper corroborating evidence to support a conviction. *Jackson v. State,* 745 S.W.2d 4, 13 (Tex.Crim.App.1988) (presence in company of accomplice near time of offense not alone conclusive, but important factor for corroboration), *cert. denied,* 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 947 (1988).

■ Cisneros further testified that appellant showed him a 12–gauge sawed-off pump shotgun a few months before the murder. Dr. Dahm, the pathologist who performed the autopsy, testified that a 12–gauge shotgun was probably used to kill the victim. Officer Perez, an investigating officer in the case, also stated that he believed a 12–gauge shotgun was used to commit the murder. Proof that connects appellant to a weapon similar to that used in the offense is another circumstance to be considered when determining the sufficiency of evidence to corroborate the accomplice. *Cockrum v. State,* 758 S.W.2d 577, 582 (Tex.Crim.App.1988)(stating "[E]ven evidence that a defendant had a gun which was merely similar to the murder weapon may corroborate accomplice testimony"), *cert. denied,* 489 U.S. 1072, 109 S.Ct. 1358, 103 L.Ed.2d 825 (1989).

■ The court of appeals also noted appellant left Brownsville without explanation after the offense. Evidence of flight and guilty demeanor, coupled with other corroborating circumstances, may tend to connect a defendant with the crime. *Burks v. State,* 876 S.W.2d 877, 888 (Tex.Crim.App.1994), *cert. denied,* 513 U.S. 1114, 115 S.Ct. 909, 130 L.Ed.2d 791 (1995); *see also Passmore v. State,* 617 S.W.2d 682, 685 (Tex.Crim.App. 1981) (evidence presented at trial which shows flight serves to corroborate accomplice testimony). The following nonaccomplice testimony introduced at trial demonstrates flight. Officer Perez testified that two days after the murder he went to appellant's residence and spoke to appellant's wife who told him that she did not know of appellant's whereabouts. Perez left his telephone number with appellant's wife and told her to have appellant contact him. Appellant never contacted Perez. A few days after he spoke to appellant's wife, Perez executed an evidentiary search warrant at appellant's residence; no one was there and Perez discovered most of the furniture that was in the house when he spoke to appellant's wife was gone. Although it is not necessary that a defendant be aware that he is a suspect in order to show flight, a reasonable jury could infer from these circumstances that appellant's wife notified appellant that Perez wished to speak to him.[6] *See* ROY R. RAY, LAW OF EVIDENCE § 1538, at 245 (3rd ed.1980). Cisneros testified that on the day of the murder, appellant told Cisneros that he would pick up his trucks from him the next day, but that appellant did not pick up the trucks the following day as planned. Salgado, a store clerk, testified that appellant rented two videotapes on the night of the murder; the videos were due the next day but were never returned.

All the law requires is that there be *some* non-accomplice evidence which *tends* to connect the accused to the commission of the offense. While individually these circumstances might not be sufficient to corroborate

---

**6.** Perez testified that appellant's attorney was informed that a warrant had issued for appellant's arrest. This testimony is of little, if any, probative value to demonstrate flight, however, since we do not know if appellant was in contact with his attorney such that appellant could receive this information from him.

the accomplice testimony, taken together, rational jurors could conclude that this evidence sufficiently *tended* to connect appellant to the offense. *See Cox v. State,* 830 S.W.2d 609, 612 (Tex.Crim.App.1992) (holding evidence of other suspicious circumstances filled sufficiency gap left by evidence of appellant's mere presence at scene of offense); *Paulus v. State,* 633 S.W.2d 827, 846 (Tex.Cr.App. 1981) (evidence showing motive or opportunity can be considered in connection with other evidence tending to connect the accused with the crime). The court of appeals erred in failing to address the existence of evidence distinguishing this case from *Cruz* and the significance of the evidence tending to connect the accused to crime, as established by controlling caselaw. While our usual practice is to remand to the court of appeals to apply correctly all of the facts to the appropriate legal standard, to do so in this case would be redundant since our resolution of the issue before us required that we conduct our own analysis of the facts and law. We hold the evidence was sufficient to corroborate the accomplice witness' testimony.

Therefore, the court of appeals' decision is reversed and this cause remanded to that court so that it may address the merits of appellant's remaining points of error.

OVERSTREET, Judge, dissenting.

I dissent to the majority's disposition of this case because once again this Court seeks to decide a case based on nothing more than what it believes the result should be. In doing so, the court is once again second-guessing a decision of the appellate court. "Our principal role as a court of last resort is the caretaker of Texas law, not the arbiter of individual applications." *Arcila v. State,,* 834 S.W.2d 357, 360 (Tex.Cr.App.1992). In reviewing courts of appeals decisions, it is our duty to ensure that the lower court reviewed the appropriate pertinent facts and performed an adequate analysis using proper case law. Unless during our review we determine that the appellate court did not properly analyze the appropriate pertinent facts

in light of existing case law and reach an opinion based upon that analysis, we must give deference to the judgment. We must *not* substitute our own judgment just because we would have reached a different result in performing the same analysis of the same facts and case law. This Court is justified in reversing a decision of the court of appeals and remanding the case to be reconsidered when the appellate court does not rely on the appropriate pertinent facts or applicable case law in performing its analysis to reach a decision.

It appears that the majority's justification for reaching a different a result rests on the following premise. The majority states that the court of appeals "did not fully consider all the facts and did not apply controlling case law." In doing so, the majority details non-accomplice evidence that 1) demonstrates that appellant was with the accomplice on the night of the offense, 2) connects appellant to a weapon similar to the one used to commit the offense, and 3) indicates that appellant departed soon after the victim was killed.[1] The facts pointed out by the majority are similar to the facts of *Cruz v. State,* 690 S.W.2d 246 (Tex.Cr.App.1985), which was relied upon by the court of appeals in its analysis. In *Cruz* there was testimony that the defendant had a weapon similar to the weapon used in the crime, the defendant had been near the scene of the crime, and the defendant had disappeared after the crime. Because *Cruz* is still good law, the court of appeals was correct in relying upon it in the instant case and was not unreasonable in concluding that the non-accomplice testimony was insufficient to connect the accused with the commission of the offense. *Hernandez v. State,* 907 S.W.2d 654 (Tex.App.—Corpus Christi 1995). The fact that the majority cites other cases which the court of appeals could have used in its analysis does not diminish the validity of the court of appeals' analysis and conclusion. The facts of the other cases are dissimilar enough to justify the court of appeals' reliance on *Cruz,* which appears more analogous. If this Court is unwilling to abide by the principle of *Arcila,*

---

1. The majority does not indicate in its opinion any appropriate pertinent facts that the court of appeals did not consider.

*supra* then we should overrule *Arcila* instead of following it at our whim or ignoring it at our whim. *See Arcila, supra,* Overstreet, J., dissenting.

Thus, it is my opinion that this Court ought to review evidentiary sufficiency questions only when the lower court either fails to consider the applicable law or failed to account for all the appropriate pertinent facts. Since the court of appeals in this case did neither, I would affirm the judgment of the court of appeals and dismiss the State's petition for discretionary review as improvidently granted.