11th Court of Appeals








11th Court
of Appeals

Eastland,
Texas

Opinion

John William Burrows

Appellant

Vs.                   No.
11-01-00147-CR B Appeal from Dallas County

State of Texas

Appellee

 

John
William Burrows owned a plumbing business that had financial problems.  The business was housed in a building owned
by Burrows.  Burrows filed for
bankruptcy in 1998.  On January 22,
1999, the building was destroyed in a three-alarm fire.  James Kennedy and Michael Deion Beavers
confessed to setting the fire for Burrows.

Burrows
was convicted of arson in a jury trial and sentenced to 10 years confinement
and a $10,000 fine.  Burrows brings
three issues on appeal.  We affirm the
judgment of the trial court.

In his
first issue, Burrows urges that the evidence is insufficient to corroborate the
accomplice testimony connecting him to the offense.

A
conviction cannot stand on accomplice testimony unless corroborated by other
evidence tending to connect the defendant with the offense.  TEX. CODE CRIM. PRO. ANN. art. 38.14 (Vernon
1979).  It is not necessary that the
corroborating evidence directly connect the defendant to the crime or that it
be sufficient by itself to establish guilt; it need only tend to connect the
defendant to the offense.  Cathey v.
State, 992 S.W.2d 460, 462 (Tex.Cr.App.1999). 
If the combined weight of the non-accomplice evidence tends to connect
the defendant to the offense, the requirement of Article 38.14 has been
fulfilled.  Cathey v. State, supra at
462. 

The test
for weighing the sufficiency of corroborative evidence is to eliminate from
consideration the testimony of the accomplice witness and then examine the
testimony of other witnesses to ascertain if there is evidence which tends to
connect the accused with the commission of the offense.  Hernandez v. State, 939 S.W.2d 173, 176
(Tex.Cr.App.1997).








Kennedy
and Beavers were accomplices.  Kennedy
and Beavers testified that they started the fire in return for payment from
Burrows.  Kennedy worked for Burrows as
a plumber assistant in 1998 and 1999. 
Kennedy said that Burrows approached him the Friday before the fire and
said that the company was having financial problems and that he needed to Astick it@ to the insurance company. 
Burrows asked him to burn the building. 
Burrows told him that whoever participated could not be paid until he
received  the insurance money.  Burrows told Kennedy that he could have any
of the equipment in the building. 
Burrows also told Kennedy that he would fill up the gas trailer and
leave it inside the building.  Kennedy
met with Burrows the night of the fire, and Burrows assured him that the doors
to the building were unlocked and that the alarm was off.  Burrows also paid Kennedy $300 at this
meeting and told him to make sure the walls were soaked. 

Beavers
worked for Burrows for four or five years as a plumbing helper.  Beavers said that Kennedy told him that
Burrows wanted them to burn down the building because he was broke.  The night of the fire, Beavers and Kennedy
filled up two trucks with equipment from the shop and then took the equipment
to Kennedy=s house. 
Beavers and Kennedy left everything in the garage and returned to the
shop.  They then took gasoline from the
trailer and poured it on the vehicles in the shop and on the walls.  When they were finished, Kennedy lit some
trash by the front door of the building. 
As they left, Beavers heard explosions and saw the fire.

Eliminating
the accomplice testimony, the record contains the following evidence.  George R. Burridge, an insurance agent, said
that on January 20, 1999, Burrows came to his office and that together, they
decided to raise the insurance coverage on the building to $800,000.  The coverage of $800,000 was put into effect
on January 20. 

Mitchell
B. Sandlin, a supervisor with Hartford Insurance Group, testified that:  (1) a guard dog that was usually kept on the
premises was not there the night of the fire; (2) a fishing boat that was
usually kept in the building had been moved outside; and (3) a tank trailer
with 120-gallon capacity had been parked inside the building and filled with
110 gallons of gas the day of the fire. 
Also, there was a nonworking Mercedes found inside the building.  The automobile=s engine had been removed and placed in the trunk.  Because the business was having financial
difficulties, Sandlin said that these facts raised concerns about the fire.








Christopher
McLeod is a claims supervisor for Amica Mutual Insurance Company.  Amica issued personal automobile policies
for Burrows, insuring the Mercedes and a Ford pickup.  Burrows filed a claim for loss on the Mercedes and the Ford
pickup which were damaged in the fire. 
McLeod said that Burrows had refused to cooperate with the adjuster and
refused a written request for an examination under oath.  

Ann
Wilhite, an employee of Burrows who did accounts receivable work, said that
Burrows instructed her to keep the safe unlocked the night of the fire.  Randy Buchanan worked for Burrows from 1996
until the fire.  He also attended church
with the Burrows.  Buchanan recalled
that the Mercedes was not running and that it was kept in the parking lot for
the past year before the fire.  Buchanan
testified that he helped bring the Mercedes inside the warehouse on January 22,
1999.  When he opened the door of the
Mercedes the Sunday after the fire, it smelled like gasoline.  Buchanan said that Burrows usually drove the
Ford pickup but that, when he went home the night of the fire, Burrows drove a
company truck. 

Because it
tends to connect Burrows to the offense, the evidence is sufficient to
corroborate the accomplice testimony. 
Burrows=s first issue is overruled.

For
clarity, we next address Burrows= third issue.  In this issue,
Burrows asserts that the court amending the indictment lacked jurisdiction to
amend the indictment without a proper transfer order.

The case
was assigned to the 282nd District Court. 
The order granting the motion to amend the indictment was signed by
Judge Henry Wade, Jr., Judge of the 292nd District Court.  The Presiding Judge of the 282nd District
Court, Judge Karen Greene, was absent and did not sign the order.  Burrows asserts that, based on TEX. CODE
CRIM. PRO. ANN. art. 4.16 (Vernon 1977), a transfer order was required to allow
another Dallas County district judge to rule on the motion to amend the
indictment.

Article
4.16 provides:

When two
or more courts have concurrent jurisdiction of any criminal offense, the court
in which an indictment or a complaint shall first be filed shall retain
jurisdiction except as provided in [TEX. CODE CRIM. PRO. ANN. art. 4.12 (Vernon
Supp. 2002)].

 

Burrows
argues that, without a transfer order, the latter court=s action was voidable and erroneous.  Burrows objected that the 292nd District
Court did not have jurisdiction to consider the State=s Motion to Amend.  We disagree.








In a
county where there are two or more district courts, in cases of absence, sickness,
or disqualification of any of the judges, any other of the judges may hold
court for him.  TEX. GOV=T CODE ANN. ' 24.303 (Vernon 1988).  Any of
the judges may hear and determine any part of any case or proceeding pending in
any of the courts, and any other of the judges may complete the hearing and
render judgment in the case or proceeding. 
Any of the judges may hear and determine motions and all preliminary
matters and may enter judgment or order on them in the court in which the case
or proceeding is pending without transferring the case or proceeding.

Judge Wade
is specifically given jurisdiction in the Government Code to act for the judge
of the 282nd District Court in that judge=s absence.  Burrows= third issue is overruled.

In his
second issue, Burrows asserts that the trial court erred in granting the State=s motion to amend without giving him prior
notice.  The State filed a motion to
amend the indictment on January 22, 2001. 
On that same day, an order amending the indictment was signed, and the
indictment was actually amended.[1]  

Burrows
filed a motion challenging the amended indictment based on the lack of notice
that the indictment was about to be amended. 
The trial court denied the motion. 
The prosecutor acknowledged that Burrows was not given notice of the
amendment until after the indictment had been amended. 

TEX. CODE
CRIM. PRO. ANN. art. 28.10(a) (Vernon 1989) provides:








After notice to the
defendant, a matter of form or substance in an indictment or information may be
amended at any time before the date the trial on the merits commences.  On the request of the defendant, the court
shall allow the defendant not less than 10 days, or a shorter period if
requested by the defendant, to respond to the amended indictment or
information.

 

Burrows urges that violations of TEX. CODE CRIM. PRO. ANN. art. 28.10
(Vernon 1989) are no longer subject to a harmless error analysis but, instead,
require automatic reversal, relying on Hillin v. State, 808 S.W.2d 486, 488
(Tex.Cr.App.1991).  Simply because an
error is not subject to the harmless error rule on appeal does not mean that
any error is not curable at the trial stage when brought to the attention of
the court.  Article 28.10 provides for a
10-day notice prior to trial for amending the indictment.  Article 28.10 was designed to address the
situation where the State amends the indictment the day of trial or during
trial, as in Hillin, thereby acting as a surprise to the defense.  The proper remedy in such a situation would
be a continuance.  In this case, Burrows
received actual notice of the amendment more than 10 days prior to trial.  Burrows received all of the relief he was
entitled to at trial. 

Moreover, the amended indictment does not include substantive changes
from the original indictment.  Article
28.10(c) prohibits the State from amending the indictment over a defense
objection if such amendment results in an additional or different offense.  An analysis of Article 28.10(c) applies to
an indictment amendment under Article 28.10(a).  Hillin v. State, supra at 488. 
If the defendant objects to an amendment under Article 28.10(a), the
trial court may freely overrule him and does not commit error unless the
amendment charges the defendant with an additional or different offense or
prejudices his substantial rights (as prohibited by Article 28.10(c)).  Hillin v. State, supra at 490. Burrows= second issue is overruled.

Because we have overruled each of Burrows= issues on appeal, we affirm the judgment of the trial court.

 

W. G. ARNOT, III

April
25, 2002                                                  CHIEF
JUSTICE

Do
not publish.  See TEX.R.APP.P. 47.3(b).

Panel consists of: Arnot,
C.J., and

Wright, J., and McCall,
J.











[1]The original indictment reads as follows:

 

JOHN WILLIAM BURROWS, defendant, on or about the 22nd
day of January, A.D., 1999, in said county and state, committed arson by
starting a fire or causing an explosion with intent to destroy or damage any
building or vehicle knowing that it is insured against damage or destruction,
or knowing that it is subject to a mortgage or other security interest, or
knowing that the building or vehicle was within the limits of an incorporated
city or town and said defendant by commission of said offense did thereby cause
bodily injury to be suffered by David Hill, against the peace and dignity of
the State.

 

The amended indictment reads:

 

JOHN WILLIAM BURROWS, defendant, on or about the 22nd
day of January, A.D., 1999, in said county and state, then and there did
intentionally start a fire and cause an explosion by using flammable accelerants
with intent to destroy and damage any building and vehicle knowing that it was
insured against damage and destruction, and knowing that it was subject to a
mortgage and other security interest, and knowing that the building and vehicle
were within the limits of an incorporated city and town, and said defendant, by
commission of said offense, did thereby cause bodily injury to be suffered by
David Hill, against the peace and dignity of the State.