Opinion issued March 10, 2005


     








In The
Court of Appeals
For The
First District of Texas




NO. 01-03-01275-CR




MICHAEL LYNN HOLBERT, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 912403




MEMORANDUM OPINION

          Appellant, Michael Lynn Holbert, was convicted by a jury of capital murder. 
The trial judge sentenced appellant to life imprisonment.


 In two issues, appellant
contends the evidence is legally and factually insufficient to support his conviction. 
We affirm.
Background
          At trial, Rashard Mays testified against appellant. Mays stated that, on the
night of April 1, 2002, appellant and T. Wilridge picked him up in a stolen Ford
Expedition. Wilridge had bought a Beretta nine millimeter gun from J. Marroquin,
and the three of them decided to commit a robbery with the gun. They stole another
car before the robbery so that they would not be caught in the Expedition. Appellant
chose to rob the Royal Food Mart because it was empty. Wilridge stayed with the
car, while Mays and appellant went into the store. All three men were wearing gloves
to avoid getting prints on the stolen car. Mays was wearing a red pullover shirt, and
appellant was wearing a dark-colored hooded shirt. 
          Mays testified that appellant had the Beretta when he got out of the car. 
Appellant went into the store first and got a Gatorade. Mays went into the store after
appellant. Appellant pulled out the Beretta and told the complainant, Sukhdev Singh,
to open up his cash register and give them the money. Mays testified that he told the
complainant, “Do like he says.” The complainant did not open the register, but
picked up the stool he was sitting on and started swinging it. Mays testified that he
saw appellant shoot the complainant. Mays stated that both he and appellant left the
store without taking any money. After getting into the car driven by Wilridge,
appellant told them never to talk about their actions.
          While in the store, appellant had seen a surveillance camera and shot at it. 
Neither appellant nor Mays realized that there was another camera and that a
videotape was recording their actions. Deputy M. Staudt, a patrolman for the Harris
County Sheriff’s Department, testified that he found the security videotape. B. Gorr,
from the Forensic Audio Video Laboratory at the Houston Police Department,
testified that the videotape was not a continuous recording; instead it captured time-lapsed images from the two video cameras in the store. Gorr stated that he made still
photographs from the videotape at the request of Detective P. Klim. 
          Klim, assigned to the Homicide Division in the Harris County Sheriff’s
Department, testified that she was the lead investigator on the case. She testified that
she had watched the videotape multiple times, and that it showed a black male with
braided hair, wearing a dark-colored shirt, pointing a gun at the complainant. The
tape also showed another male, wearing a red hooded shirt. Klim stated that in the
next image the complainant was holding a stool up in a defensive manner. Klim
testified that, in her opinion, the shooting happened during a lapse in taping.
          Deputy J.T. Wagner, of the Harris County Sheriff’s Department, testified that
he was one of the crime scene units who investigated the shooting. When he arrived
at the scene, he saw a Gatorade sitting on the counter. He recovered nine millimeter
bullet casings from the store. 
          P. Boucher testified that on April 3, 2002, he saw appellant and four others pull
into the Taco Bell parking lot at Deerbrook Mall. He saw appellant pull out a gun,
which appeared to be a semi-automatic, and waive it over the dashboard of the Ford
Expedition appellant was driving. Fearing that appellant was going to rob the Taco
Bell, Boucher called 911. Boucher stated that appellant’s hair was in corn-rows.
          Officer E. Squier, of the Humble Police Department, responded to Boucher’s
911 call. Squier, with police back-up waiting outside, went into the Taco Bell and
asked appellant’s group who was driving the Expedition. Appellant denied driving
the car and stated they had walked over from the mall. Appellant’s response made
Squier suspicious that the Expedition was stolen. Squier then ran the vehicle
identification number (VIN) of the Expedition and discovered that it had been stolen
from Montgomery County. When Squier looked into the car to obtain the VIN, he
saw a gun, with the handle pointing up, wedged between the driver’s seat and the
middle console. With the help of his back-up, Squier arrested appellant and the
members of his group. Boucher identified appellant as the driver of the car and as the
person who had waived the gun around.
          Upon searching the Expedition, Squiers found a Beretta nine millimeter gun,
several different types of bullets, one bullet casing, and a pair of sporting gloves. The
Beretta was brought to the Harris County Regional Firearms Laboratory for analysis
and documented into the Integrated Ballistics Identification System (IBIS). IBIS is
a nationwide computerized database for firearms, bullets, and cartridge casings. IBIS
allows evidence recovered from an incident involving a firearm to be compared to
other incidents in the database to determine whether the same firearm was used in
another incident. M. Clements, a firearms and tool mark examiner with the Harris
County Sheriff’s Office, conducted the analysis and documentation for the Beretta
and entered his results into IBIS.
          Deputy R. Anderson, assigned to the identification division of the Harris
County Sheriff’s Office, analyzed and documented the bullet casings recovered from
the Royal Food Mart. After entering the information on the casings into IBIS, 
Anderson discovered that a firearm possibly matching the weapon that had been used
at the Royal Food Mart had been entered into IBIS by his department. Anderson
testified that he obtained the information from IBIS and conducted a side-by-side
microscopic analysis; he determined that the weapon from Clement’s analysis was the
same firearm that was used to kill the complainant at the Royal Food Mart.
          Klim was notified that the firearm that had been used in the shooting at the
Royal Food Mart had been located and recovered from an arrest in Humble. She
contacted a detective from the Humble Police Department and requested the names
of the people arrested at the Taco Bell. The detective gave Klim the following names:
Michael Holbert, Rashard Mays, Patricia Palacios, Gregory Brown, and Jonathan
Hooper. Klim pulled photographs from the Harris County Sheriff’s and Montgomery
County’s databases. She testified that she immediately recognized appellant as the
man who had shot the complainant. Klim identified appellant in court, stating that
his hair was shorter at trial than it was on the tape. Klim testified she believed that
appellant was the person who had shot the complainant. Klim also stated that she
recognized Mays from the videotape as the man who was wearing red. Based on her
identification, Klim went to Mays’s home to arrest him. At the time of his arrest,
Mays was wearing the same red shirt he had worn on April 1, 2002. Mays gave Klim
a statement and the gloves he had worn during the shooting. Based on this
information, Klim filed capital murder charges against Mays and appellant.
          In addition to testifying at trial about the murder at the Royal Food Mart, Mays
testified that, two days after the shooting, appellant drove three others and himself to
Taco Bell. Appellant took the Beretta out of his waistband and put it between the
Expedition’s seats. However, the members of the group were apprehended before
anything happened in the store. Mays testified that he was charged as a juvenile, but
was certified to stand trial as an adult for the capital murder of the complainant. The
State offered to lessen the charge to aggravated robbery if Mays would testify against
appellant.
          Appellant’s mother and brother testified that they saw the videotape and the
still photographs and that, in their opinion, appellant was not the man who shot the
complainant. Appellant’s aunt testified that she did not braid appellant’s hair into
corn-rows on April 1, 2002; she braided his hair on the 2nd.
Discussion
          In two issues, appellant argues that the evidence is legally and factually
insufficient to support his conviction for capital murder because the State did not
prove beyond a reasonable doubt that appellant was guilty due to insufficient
corroboration of Mays’s, the accomplice witness, testimony.
          Article 38.14 of the Code of Criminal Procedure governs the testimony of
accomplice witnesses. Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 1979). 
Article 38.14 states, “A conviction cannot be had upon the testimony of an
accomplice unless corroborated by other evidence tending to connect the defendant
with the offense committed; and the corroboration is not sufficient if it merely shows
the commission of the offense.” Id. 
           The Court of Criminal Appeals has declined to impose the traditional legal and
factual sufficiency standards


 on a review of accomplice witness testimony under
article 38.14. Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999). The
accomplice witness rule is a statutorily imposed sufficiency review and is not derived
from the state or federal constitutional principles that otherwise govern legal and
factual sufficiency review. Id. at 462–63. Instead, the Legislature established the
burden that the non-accomplice witness evidence must tend to connect appellant with
the offense. Id. at 463.
          The test for weighing the sufficiency of corroborative evidence is to eliminate
from consideration the testimony of the accomplice witness and then to examine the
testimony of other witnesses to determine whether there is evidence that tends to
connect the accused with the commission of the offense. Hernandez v. State, 939
S.W.2d 173, 176 (Tex. Crim. App. 1997). The non-accomplice testimony does not
have to prove beyond a reasonable doubt that the defendant is guilty of the offense. 
Id. Nor does the non-accomplice testimony have to directly link the defendant to the
commission of the offense. Id. “The accomplice witness rule is satisfied if there is
some non-accomplice evidence which tends to connect the accused to the commission
of the offense alleged in the indictment.” Id. (emphasis in original). Even apparently
insignificant incriminating circumstances may be sufficient corroborative evidence
to satisfy the accomplice witness rule. Dowthitt v. State, 931 S.W.2d 244, 249 (Tex.
Crim. App. 1996). 
          The non-accomplice witness evidence establishes that appellant was seen in
possession of the same Beretta that killed the complainant. Proof that connects
appellant to the weapon used in the offense is proper corroborative evidence. 
Cockrum v. State, 758 S.W.2d 577, 582 (Tex. Crim. App. 1988). Even evidence that
connects the appellant to a weapon merely similar to the weapon used in the offense
may corroborate the accomplice witness’ testimony. Id. The surveillance videotape
and the photographic stills depict appellant and Mays committing the robbery; and
Klim identified appellant and Mays as the two men on the videotape and in the stills. 
 When considered jointly, the testimony of the non-accomplice witnesses is more than
sufficient to tend to connect appellant with the capital murder of the complainant.
          We overrule appellant’s first and second issues.
Conclusion
          We affirm the judgement of the trial court.    
 
 
                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Taft, Keyes, and Hanks.
Do not publish. Tex. R. App. P. 47.2(b).