CHAMBERS V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-463-CR

ANTHONY CHAMBERS APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Anthony Chambers appeals his conviction for five counts of aggravated robbery.  In one point, he contends that the evidence is factually insufficient to support his conviction.  We affirm.

On May 12, 2005, two men entered The Plant Shed in Fort Worth, Texas and robbed the cashier and several store patrons at gun point. During the robbery, Ramiro Jayme, the store manager, called the police.  Shortly thereafter, a Fort Worth police officer saw two men matching the suspects’ descriptions in a white car pulling out of a nearby apartment complex.  The officer then noticed two more people in the white car.  After more police units arrived, the officers stopped the car, removed all of the occupants from the vehicle, and, after further investigation, found a large amount of cash stuffed in various places in the back seat of the suspects’ car.  

The occupants of the white car were Bobby Cartwright, Michael Walker, Paul Hall, and appellant.  Walker was driving, Cartwright was in the front passenger seat, and Hall and appellant were in the back seat closest to the cash the police found in the car.  

The detective in charge of the investigation prepared a photo spread, including pictures of appellant and Hall, which he showed to the witnesses of the robbery.  Four witnesses identified Hall as one of the robbers and one witness identified appellant.  

The detective interviewed Hall, who eventually gave a recorded statement implicating himself and appellant in the robbery.  Hall entered into a plea bargain with the State in which the State recommended that he receive a six-year prison sentence for his role in the aggravated robberies, in exchange for his testimony at appellant’s trial.  

At trial, Hall testified that he, Cartwright, Walker, and appellant formed the plan to rob the people in the store on the day of the robbery.  Cartwright and Walker entered the store first and then gave Hall and appellant the signal to go in.  Hall and appellant then went into the store with masks made from T-shirt sleeves.  As they entered The Plant Shed, appellant pointed a gun at the customers and employees inside, shouted in an aggressive tone, and told everyone to get on the floor.  Appellant and Hall took the cash from the register and some purses from the customers.  The two men ran out of the store after the robbery and went into some nearby apartments.  Eventually, they got into a white car with Cartwright and Walker, the same car in which they were riding when they were arrested.  Hall said that as the police pulled them over, he stuffed the money from the robbery in the back seat of the car. 

Hall also gave a description of what he and appellant were wearing at the time of the robbery.  Hall was wearing a blue T-shirt with a mask made out of the sleeve of the same shirt.  Appellant was wearing a white T-shirt and blue Dickies pants.  

Ramiro Jayme, the manager of The Plant Shed, testified that he saw the two men walk past a window on their way into the store; one was wearing a white shirt and one was wearing a blue shirt.  Jayme was in the back area of the store when he heard screaming in the retail room and saw, from a distance, two African-American men with masks near the cash register.  Before he went into the area, he called 911 and told the dispatcher the store was getting robbed.  As he moved into the retail room he saw a man in a white shirt, holding a pistol in his hand, aggressively waiving it around and pointing it at the people in the store.  Jayme said the man in the blue shirt “seemed a little timid, a little afraid but he was extremely calm.”  Appellant used cuss words as he demanded that the cashier give him the drawer of her register.   Jayme helped the cashier open the drawer and hand it to appellant.  Jayme estimated that the men took between $200 and $300 from the store.  He also noted that during the robbery, he saw two other men walk out of the store and the robbers did not try to stop them.  

Shortly after the robbery, Jayme was given a photo spread in order to identify the gunmen involved in the robbery.  He identified appellant as the robber in the white shirt who held the gun and Hall as the other robber in the blue shirt.  

Candice Lynn Green, the store’s cashier, testified that on the day of the robbery, a man in a white shirt with a blue bandana over his face approached her from behind with a gun and said, “Open the door, you fucking bitch.”  She said the man with the white shirt was accompanied by a man in a blue shirt who took the women’s purses.  According to Green, both men were African-American.  Green later identified Hall from a photo spread shortly after the robbery but never identified appellant.  

Ruth Graser, a seventy-six year old customer of The Plant Shed on the day of the robbery, testified that the robbers were two younger-looking African-American men who were wearing masks.  She said that the man holding the gun was taller and had on a white shirt and the man without a gun was wearing a blue shirt.  The robbers took her purse, which contained her cell phone.  Graser’s cell phone was ultimately recovered from the car in which appellant and Hall were arrested.  Graser was unable to identify either of the robbers from a photo spread administered after the robbery.  

The other witnesses to the robbery were the store’s customers, Sentry Dupree, Michelle Harmon, and Wanda Tucker.  The trial court admitted each of their accounts of the robbery by agreed stipulation of the evidence and the prosecutor read their written accounts to the jury.  All three women described the robbers as two African-American men, one wearing a white shirt, and the other wearing a dark T-shirt.  They also stated that the men threatened them with firearms, were aggressive, and took their purses.  Tucker and Dupree were able to identify Hall from a photo spread, but not appellant.  Harmon said both of the men wore masks.  Harmon also said that the men took an item of her jewelry, which the police eventually found in the white car.   

Officer Patrick Gass, an officer for the crime scene search unit for the Fort Worth Police Department, testified about his investigation of the robbery.  He searched the white car in which appellant and Hall were arrested and found two blue T-shirt sleeves in the back of the car, one behind the rear seat center armrest and the other behind the right front seat.  Officer Gass identified the other items that the police found in the car stuffed behind the seats and the armrest, including over $300 in cash, a cell phone, jewelry, and various credit cards.  

After hearing all the evidence, a jury found appellant guilty of five counts
(footnote: 2) of aggravated robbery and assessed his punishment at sixty years’ incarceration and a $10,000 fine on each count.  

In his sole point, appellant asserts that the evidence is factually insufficient to support his conviction because Hall’s testimony is not corroborated by other evidence tending to connect appellant to the crime as required by article 38.14 of the code of criminal procedure.
(footnote: 3)
 Article 38.14 of the code of criminal of procedure provides that

[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.
(footnote: 4)

In conducting a factual sufficiency review under the accomplice-witness rule, we must eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to ascertain if there is any evidence that tends to connect the accused with the commission of the crime.
(footnote: 5)  “Tendency to connect” rather than rational sufficiency is the standard:  the corroborating evidence need not be sufficient by itself to establish guilt beyond a reasonable doubt.
(footnote: 6)  Nor is it necessary for the corroborating evidence to directly link the accused to the commission of the offense.
(footnote: 7)  To satisfy the accomplice-witness rule there simply needs to be other evidence tending to connect the accused to the commission of the offense.
(footnote: 8)
 Mere presence of the accused at the scene of the offense is insufficient to corroborate accomplice witness testimony.
(footnote: 9)  Evidence of the accused’s presence at the scene, however, when combined with other suspicious circumstances may be enough to connect the accused to the offense.
(footnote: 10)  Evidence that the accused was in the presence of the accomplice at or near the time or place of the crime is proper corroborating evidence.
(footnote: 11)
 Excluding Hall’s testimony as mandated by article 38.14, the remaining evidence supporting appellant’s conviction for aggravated robbery is as follows:

Appellant was identified by an eyewitness, Jayme, as one of the robbers from a photo spread shortly after the crime and at trial.
(footnote: 12)  Jayme described appellant as wearing a white shirt and a mask during the robbery, and stated that appellant was aggressively waiving a gun.  Three other eyewitnesses to the robbery—Graser, Green and Harmon—verified that both robbers wore masks and that one had on a white shirt and the other a blue or dark shirt.  After the robbery, appellant was found in the white car, where the cash and stolen items were found.  At the time of his arrest, appellant was wearing a white shirt.  We hold that this evidence tends to connect appellant to the robbery, and, therefore, that Hall’s accomplice witness testimony was sufficiently corroborated. 
  

Because we conclude that Hall’s testimony was sufficiently corroborated, we overrule appellant’s sole point and affirm the trial court’s judgment.
(footnote: 13) 

PER CURIAM

PANEL F: CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  October 12, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
The indictment charged appellant with seven counts of aggravated robbery.   

3:
Tex. Code Crim. Proc. Ann. 
art. 38.14 (Vernon 2005). 

4:
Id. 

5:
Solomon v. State
, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); 
Hernandez v. State
, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997). 

6:
Solomon
, 49 S.W.3d at 361; 
Cathey v. State
, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999), 
cert. denied
, 528 U.S. 1082 (2000).  

7:
Cathey
, 992 S.W.2d at 462.

8:
See id.
 at 463.

9:
See Cox v. State
, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992).  

10:
See Dowthitt v. State
, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996).

11:
See Hernandez
, 939 S.W.2d at 178
; McDuff v. State
, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997). 

12:
Appellant asserts that we should disregard Jayme’s testimony because his description of how the photo spread was administered differed from the detective’s description of the photo spread, and because he remembered more details about the robbery during his testimony at trial than when he spoke to the police shortly after the crime.  Appellant contends that Jayme’s “mis-identification” of appellant is a case of manifest injustice for which we are permitted to disregard a jury’s credibility finding.  We disagree and we decline to substitute our own judgment for that of the 
jury on witness credibility or how much weight to give each witness’s testimony.
  
See Hanks v. State
, 137 S.W.3d 668, 671 (Tex. Crim. App. 2004)
; Swearingen v. State
, 101 S.W.3d 89, 98 (Tex. Crim App. 2003) (stating that appellate courts must defer to the jury’s determinations concerning the weight and credibility of the evidence when conducting a factual sufficiency review)
.  
 

13:
Appellant concedes that if we conclude that Hall’s testimony is sufficiently corroborated, the evidence is factually sufficient to establish appellant’s identity as the armed robber.