COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-463-CR

 

 

ANTHONY CHAMBERS                                                         APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM
CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

Appellant Anthony Chambers
appeals his conviction for five counts of aggravated robbery.  In one point, he contends that the evidence
is factually insufficient to support his conviction.  We affirm.








On May 12, 2005, two men
entered The Plant Shed in Fort Worth, Texas and robbed the cashier and several
store patrons at gun point. During the robbery, Ramiro Jayme, the store
manager, called the police.  Shortly
thereafter, a Fort Worth police officer saw two men matching the suspects= descriptions in a white car pulling out of a nearby apartment
complex.  The officer then noticed two
more people in the white car.  After more
police units arrived, the officers stopped the car, removed all of the
occupants from the vehicle, and, after further investigation, found a large
amount of cash stuffed in various places in the back seat of the suspects= car.  

The occupants of the white
car were Bobby Cartwright, Michael Walker, Paul Hall, and appellant.  Walker was driving, Cartwright was in the
front passenger seat, and Hall and appellant were in the back seat closest to
the cash the police found in the car.  

The detective in charge of
the investigation prepared a photo spread, including pictures of appellant and
Hall, which he showed to the witnesses of the robbery.  Four witnesses identified Hall as one of the
robbers and one witness identified appellant. 


The detective interviewed
Hall, who eventually gave a recorded statement implicating himself and
appellant in the robbery.  Hall entered
into a plea bargain with the State in which the State recommended that he
receive a six-year prison sentence for his role in the aggravated robberies, in
exchange for his testimony at appellant=s trial.  








At trial, Hall testified that
he, Cartwright, Walker, and appellant formed the plan to rob the people in the
store on the day of the robbery. 
Cartwright and Walker entered the store first and then gave Hall and
appellant the signal to go in.  Hall and
appellant then went into the store with masks made from T-shirt sleeves.  As they entered The Plant Shed, appellant
pointed a gun at the customers and employees inside, shouted in an aggressive
tone, and told everyone to get on the floor. 
Appellant and Hall took the cash from the register and some purses from
the customers.  The two men ran out of
the store after the robbery and went into some nearby apartments.  Eventually, they got into a white car with
Cartwright and Walker, the same car in which they were riding when they were
arrested.  Hall said that as the police
pulled them over, he stuffed the money from the robbery in the back seat of the
car. 

Hall also gave a description
of what he and appellant were wearing at the time of the robbery.  Hall was wearing a blue T-shirt with a mask
made out of the sleeve of the same shirt. 
Appellant was wearing a white T-shirt and blue Dickies pants.  








Ramiro Jayme, the manager of
The Plant Shed, testified that he saw the two men walk past a window on their
way into the store; one was wearing a white shirt and one was wearing a blue
shirt.  Jayme was in the back area of the
store when he heard screaming in the retail room and saw, from a distance, two
African-American men with masks near the cash register.  Before he went into the area, he called 911
and told the dispatcher the store was getting robbed.  As he moved into the retail room he saw a man
in a white shirt, holding a pistol in his hand, aggressively waiving it around
and pointing it at the people in the store. 
Jayme said the man in the blue shirt Aseemed a little timid, a little afraid but he was extremely calm.@  Appellant used cuss words as
he demanded that the cashier give him the drawer of her register.   Jayme helped the cashier open the drawer and
hand it to appellant.  Jayme estimated
that the men took between $200 and $300 from the store.  He also noted that during the robbery, he saw
two other men walk out of the store and the robbers did not try to stop them.  

Shortly after the robbery,
Jayme was given a photo spread in order to identify the gunmen involved in the
robbery.  He identified appellant as the
robber in the white shirt who held the gun and Hall as the other robber in the
blue shirt.  








Candice Lynn Green, the store=s cashier, testified that on the day of the robbery, a man in a white
shirt with a blue bandana over his face approached her from behind with a gun
and said, AOpen the
door, you fucking bitch.@  She said the man with the white shirt was
accompanied by a man in a blue shirt who took the women=s purses.  According to Green,
both men were African-American.  Green
later identified Hall from a photo spread shortly after the robbery but never
identified appellant.  

Ruth Graser,
a seventy-six year old customer of The Plant Shed on the day of the robbery,
testified that the robbers were two younger-looking African-American men who
were wearing masks.  She said that the
man holding the gun was taller and had on a white shirt and the man without a
gun was wearing a blue shirt.  The
robbers took her purse, which contained her cell phone.  Graser=s cell phone was ultimately recovered from the car in which appellant
and Hall were arrested.  Graser was
unable to identify either of the robbers from a photo spread administered after
the robbery.  

The other
witnesses to the robbery were the store=s customers, Sentry Dupree, Michelle Harmon, and Wanda Tucker.  The trial court admitted each of their
accounts of the robbery by agreed stipulation of the evidence and the
prosecutor read their written accounts to the jury.  All three women described the robbers as two
African-American men, one wearing a white shirt, and the other wearing a dark
T-shirt.  They also stated that the men
threatened them with firearms, were aggressive, and took their purses.  Tucker and Dupree were able to identify Hall
from a photo spread, but not appellant. 
Harmon said both of the men wore masks. 
Harmon also said that the men took an item of her jewelry, which the
police eventually found in the white car.  









Officer Patrick Gass, an
officer for the crime scene search unit for the Fort Worth Police Department,
testified about his investigation of the robbery.  He searched the white car in which appellant
and Hall were arrested and found two blue T-shirt sleeves in the back of the
car, one behind the rear seat center armrest and the other behind the right
front seat.  Officer Gass identified the
other items that the police found in the car stuffed behind the seats and the
armrest, including over $300 in cash, a cell phone, jewelry, and various credit
cards.  

After hearing all the
evidence, a jury found appellant guilty of five counts[2]
of aggravated robbery and assessed his punishment at sixty years= incarceration and a $10,000 fine on each count.  

In his sole point, appellant
asserts that the evidence is factually insufficient to support his conviction
because Hall=s testimony
is not corroborated by other evidence tending to connect appellant to the crime
as required by article 38.14 of the code of criminal procedure.[3]

Article 38.14 of the code of
criminal of procedure provides that








[a] conviction cannot be had upon the testimony
of an accomplice unless corroborated by other evidence tending to connect the
defendant with the offense committed; and the corroboration is not sufficient
if it merely shows the commission of the offense.[4]

 

In conducting a factual
sufficiency review under the accomplice-witness rule, we must eliminate the
accomplice testimony from consideration and then examine the remaining portions
of the record to ascertain if there is any evidence that tends to connect the
accused with the commission of the crime.[5]  ATendency to connect@ rather than rational sufficiency is the standard:  the corroborating evidence need not be
sufficient by itself to establish guilt beyond a reasonable doubt.[6]  Nor is it necessary for the corroborating
evidence to directly link the accused to the commission of the offense.[7]  To satisfy the accomplice-witness rule there
simply needs to be other evidence tending to connect the accused to the
commission of the offense.[8]








Mere presence of the accused
at the scene of the offense is insufficient to corroborate accomplice witness
testimony.[9]  Evidence of the accused=s presence at the scene, however, when combined with other suspicious
circumstances may be enough to connect the accused to the offense.[10]  Evidence that the accused was in the presence
of the accomplice at or near the time or place of the crime is proper corroborating
evidence.[11]

Excluding Hall=s testimony as mandated by article 38.14, the remaining evidence
supporting appellant=s conviction
for aggravated robbery is as follows:








Appellant was identified by
an eyewitness, Jayme, as one of the robbers from a photo spread shortly after
the crime and at trial.[12]  Jayme described appellant as wearing a white
shirt and a mask during the robbery, and stated that appellant was aggressively
waiving a gun.  Three other eyewitnesses
to the robberyCGraser,
Green and HarmonCverified
that both robbers wore masks and that one had on a white shirt and the other a
blue or dark shirt.  After the robbery,
appellant was found in the white car, where the cash and stolen items were
found.  At the time of his arrest,
appellant was wearing a white shirt.  We
hold that this evidence tends to connect appellant to the robbery, and,
therefore, that Hall=s accomplice
witness testimony was sufficiently corroborated.   

Because we conclude that Hall=s testimony was sufficiently corroborated, we overrule appellant=s sole point and affirm the trial court=s judgment.[13]


PER
CURIAM

 

PANEL F:    CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

 

DO NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  October 12, 2006











[1]See Tex. R. App. P. 47.4.





[2]The
indictment charged appellant with seven counts of aggravated robbery.   





[3]Tex. Code Crim. Proc. Ann. art.
38.14 (Vernon 2005). 





[4]Id. 





[5]Solomon
v. State, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001); Hernandez
v. State, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997). 





[6]Solomon, 49
S.W.3d at 361; Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App.
1999), cert. denied, 528 U.S. 1082 (2000).  





[7]Cathey, 992
S.W.2d at 462.





[8]See
id. at 463.





[9]See
Cox v. State, 830 S.W.2d 609, 611 (Tex. Crim. App.
1992).  





[10]See
Dowthitt v. State, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996).





[11]See
Hernandez, 939 S.W.2d at 178; McDuff v. State, 939
S.W.2d 607, 613 (Tex. Crim. App. 1997). 





[12]Appellant
asserts that we should disregard Jayme=s testimony because his
description of how the photo spread was administered differed from the
detective=s
description of the photo spread, and because he remembered more details about
the robbery during his testimony at trial than when he spoke to the police
shortly after the crime.  Appellant
contends that Jayme=s Amis-identification@ of
appellant is a case of manifest injustice for which we are permitted to
disregard a jury=s
credibility finding.  We disagree and we
decline to substitute our own judgment for that of the jury on witness
credibility or how much weight to give each witness=s
testimony.  See Hanks v. State,
137 S.W.3d 668, 671 (Tex. Crim. App. 2004); Swearingen v. State, 101
S.W.3d 89, 98 (Tex. Crim App. 2003) (stating that appellate courts must defer
to the jury=s
determinations concerning the weight and credibility of the evidence when
conducting a factual sufficiency review). 
     





[13]Appellant
concedes that if we conclude that Hall=s testimony is sufficiently
corroborated, the evidence is factually sufficient to establish appellant=s
identity as the armed robber.