SMITH V. STATE

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-120-CR

ANTHONY D. SMITH APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

In four points, Appellant Anthony D. Smith
(footnote: 2) appeals his conviction for aggravated robbery with a deadly weapon.  Appellant waived his right to a jury trial and was found guilty by the trial court.  The trial court assessed punishment at twenty years’ imprisonment.  We will affirm.

Background

On May 27, 2001, Fort Worth Police officers, Jeremy Spann and Johnny Salazar, responded to a 911 hang-up call that had been placed from a residence located at 4221 Avenue J.  Medstar medical personnel also responded to the call.  When officers arrived, they found Brandon Cooper-Bennett (Cooper) on the porch of the house with his hand over his chest, complaining about his inability to breathe.  As the officers and medical personnel attempted to help Cooper, they noticed that he had sustained a gunshot wound to the chest at a “pretty close range.”  Spann testified that Cooper told him that he had been shot by “two black males.”  Police found no identification on Cooper and the only physical evidence recovered at the scene was a .25 caliber shell casing and some blood samples.
(footnote: 3)  Medstar transported Cooper to the hospital where he later died from the gunshot wound.

Approximately three months later, Detective Matthew Hardy became involved in the investigation of Cooper’s death.  Hardy interviewed Rodney and Michael Colbert, who were under arrest for theft of a motor vehicle.  During the interview, Rodney implicated Appellant and Darrell Richie in the shooting that occurred at Avenue J.  Over the course of the investigation, Hardy also obtained the names of Brandon Holloway and Jason Wade, who were believed to have information related to the shooting and death of Cooper.  Eventually, Hardy learned that two 911 calls were made on the date of the shooting—one from Cooper and the other from a residence located one-half block from the shooting.  Hardy learned that Cody Lacy had placed the other 911 call.  Lacy testified that she was sitting in her front yard by her front porch when a black car pulled up to her house.  She also stated that she saw two people wearing black clothing get out of the car and “head up Avenue J.”  However, Lacy could not identify the race or gender of the two people who exited the car.  Lacy stated that a few minutes after the two people exited the car she heard a gunshot.  She never saw the two people get back into the car because she went inside her house and called 911.

According to Wade, approximately two or three days after the shooting, Appellant and Richie went to his house.
(footnote: 4)  Wade stated that Appellant and Richie had talked about “hitting a lick” on the “dope house on J.”
(footnote: 5)  Wade testified that Appellant said they knocked on the door to the drug house and that Appellant admitted to shooting “him” in the chest.  Although Wade did not testify that Appellant actually said he shot Cooper, his testimony indicated that he knew who Appellant was referring to because both Wade and Cooper worked at the drug house, Wade was either supposed to take the next shift after Cooper or was trying to work the day of the shooting,
(footnote: 6) and Wade was told after the fact about who was shot and killed at the house on Avenue J.  However, it must be noted that other portions of Wade’s testimony are contradicted by the testimony of Richie and Vicki Duffy.
(footnote: 7)
 Both Holloway and Richie testified against Appellant.  According to Holloway, Appellant and Richie were with him on the night of the shooting.  He testified that both Appellant and Richie 1) were wearing dark clothing that night, 2) were riding in a black Cadillac that he was driving, and 3) were the two individuals that got out of the car when he parked on the street located at Avenue J.  Holloway testified that he heard two gunshots, not one, which contradicted the testimony of Lacy and Richie.  Additionally, Holloway stated that he did not make any deals with the State in exchange for his testimony.

According to Richie’s testimony, while he knew that he and Appellant were going to approach and rob the drug house located on Avenue J, Holloway had no idea that they were going to do so because they had only discussed buying drugs in front of Holloway and had not discussed robbing the drug house.  Richie asserted that there had never been any discussion of any killing in connection with the robbery.  He stated that Holloway drove them to the house on Avenue J, let them out, and parked and waited for them.  According to Richie, he knew that Appellant had a .25 caliber gun because he had obtained it for him.  Richie testified that Appellant went to the front door of the house on Avenue J while Richie acted as a lookout.  Upon hearing the gunshot, he ran to the porch where he saw Appellant pointing a gun at Cooper and “telling him to give him the money.”  When Appellant and Richie got back into the car, Richie testified that he asked Appellant why he shot Cooper and that Appellant stated, “[I]t happened.”  Although Wade testified that Appellant and Richie told him about their involvement in the shooting, Richie stated that he had never gone to Wade’s house and had never discussed anything about the shooting with Wade.

The trial court found Appellant guilty of aggravated robbery with a deadly weapon and sentenced him to twenty years’ imprisonment.  This appeal followed.

Sufficiency of the Non-Accomplice Evidence

In his second point, Appellant contends that the testimony of the accomplices, Holloway and Richie, is insufficiently corroborated by other evidence to sustain the conviction.  Appellant specifically argues that, without the accomplice testimony of
 
Holloway and Richie, there is nothing to implicate him in the aggravated robbery.

Applicable Law
 

A challenge of insufficient corroboration is not the same as a challenge of insufficient evidence to support the judgment as a whole.  
See Cathey v. State
, 992 S.W.2d 460, 462-63 (Tex. Crim. App. 1999), 
cert. denied
, 528 U.S. 1082 (2000); 
Cantelon v. State
, 85 S.W.3d 457, 460 (Tex. App.—Austin 2002, no pet.).  In conducting a sufficiency review under the accomplice-witness rule, the reviewing court must eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to ascertain if there is any evidence that tends to connect the accused with the commission of the crime.  
Solomon v. State, 
49 S.W.3d 356, 367 (Tex. Crim. App. 2001); 
 Hernandez v. State
, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997)
. 
 Article 38.14 of the Code of Criminal Procedure provides that

[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.

Tex. Code Crim. Proc. Ann. 
art. 38.14 (Vernon 1979).  Non-accomplice evidence does not, by itself, have to establish the guilt of the defendant beyond a reasonable doubt, but it does have to connect the defendant with the offense. 
McDuff v. State
, 939 S.W.2d 607, 613 (Tex. Crim. App.),
cert. denied
, 522 U.S. 844 (1997).  While evidence that the defendant was in the company of the accomplice before, during, and after the commission of the offense is insufficient by itself to corroborate the testimony, evidence of such presence, coupled with other suspicious circumstances, may tend to connect the accused to the offense.  
Dowthitt v
. 
State
, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996).

It is not necessary for the non-accomplice evidence to directly link the accused to the commission of the offense. 
 Cathey, 
992 S.W.2d at 462.  The accomplice witness rule is satisfied if there is some non-accomplice evidence that tends to connect the accused to the commission of the offense.  
Hernandez
, 939 S.W.2d at 176.  “Tends to connect” has been defined as to “serve, contribute, or conduce in some degree or way to have a more or less bearing or effect on the question.”  
See Holladay v. State
, 709, S.W.2d 194, 198 (Tex. Crim. App. 1986).  Furthermore, non-accomplice evidence which generally tends to prove the truth of an accomplice’s version of events is corroborative, even if it “concerns a mere detail, as opposed to a substantive link between the defendant and commission of the offense.”  
Beathard v. State
, 767 S.W.2d 423, 430 (Tex. Crim. App. 1989).

Application of Law to Facts

Here, both accomplice testimony and non-accomplice evidence existed.  Appellant correctly argues that the only non-accomplice evidence linking Appellant to the crime is the testimony of Wade.  However, he also contends that Wade’s testimony is not credible or reliable, and therefore it was insufficient to corroborate Richie and Holloway’s testimony.

A similar argument regarding weak and uncertain corroborating testimony has been rejected by our court of criminal appeals.  
See Cathey
, 992 S.W.2d at 462.  While the testimony of Wade was contradicted by other witnesses, including an accomplice-witness, and may provide an extremely weak tendency to connect Appellant with the offense, our function is not to perform a sufficiency review but to perform a literal review of the record to determine whether there is other evidence tending to connect the defendant with the offense.  
Id
. at 462-63.  The corroboration must do more than tend to prove that a crime was committed; corroborating evidence must tend to connect the particular person charged to the crime.  
See
 
Tex. Code Crim. Proc. Ann
. art. 38.14.

Here, the State’s case rested substantially on the testimony of Richie and Holloway.  Eliminating their testimony leaves very little evidence that could adequately corroborate their testimony.  However, this is not to say there was no evidence, outside Richie’s and Holloway’s testimony.  Appellant’s argument that the testimony of Wade is weak, tainted, or unreliable is misplaced because our search is for literal evidence, not strong, unimpeached, or untainted evidence.  
Id
.  Our evaluation should not intrude upon the fact finder’s role as the sole judge of the weight and credibility given to any witness’s testimony.  
Johnson v. State, 
23 S.W.3d 1, 7 (Tex. Crim. App. 2000); 
Cain v. State
, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); 
Guy v. State
, No. 2-03-411-CR, 2005 WL 375296, at *4 (Tex. App.—Fort Worth, Feb. 17 2005, no pet.).  The fact finder alone decides what weight to place on contradictory testimonial evidence.  
Cain
, 958 S.W.2d at 408-09.  Although the evidence, without Wade’s testimony, may have been insufficient to show Appellant’s guilt, it was, nevertheless, sufficient to connect Appellant to the offense.  Because Appellant’s argument rests on the supposition that Wade’s testimony should be disregarded, which we will not do, we overrule Appellant’s second point.

Legal And Factual Sufficiency

In Appellant’s first point, he argues that the evidence was legally insufficient to support his conviction for aggravated robbery.  Regarding Appellant’s third point, we address the factual sufficiency of the evidence.
(footnote: 8) 

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the judgment in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); 
Ross v. State
, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.  
Jackson
, 443 U.S. at 319, 99 S. Ct. at 2789.  The trier of fact is the sole judge of the weight and credibility of the evidence.  
See
 Tex. Code Crim. Proc. Ann.
 art. 38.04 (Vernon 1979); 
Margraves v. State
, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000).  Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact finder.  
Dewberry v. State
, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), 
cert. denied
, 529 U.S. 1131 (2000).  We must resolve any inconsistencies in the evidence in favor of the judgment.  
Curry v. State
, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.  
See Zuniga v. State
, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004).  The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.  
Id
. at 484.  There are two ways evidence may be factually insufficient:  (1) the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.  
Id
. at 484-85.  “This standard acknowledges that evidence of guilt can ‘preponderate’ in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt.”  
Id
. at 485.  In other words, evidence supporting a guilty finding can outweigh the contrary proof but still be insufficient to prove the elements of an offense beyond a reasonable doubt.  
Id
.   In performing a factual sufficiency review, we are to give deference to the fact finder’s determinations, including determinations involving the credibility and demeanor of witnesses.  
Id.
 at 481; 
Cain
, 958 S.W.2d at 407  We may not substitute our judgment for that of the fact finder’s.  
Zuniga, 
144 S.W.3d at 482.

A proper factual sufficiency review requires an examination of all the evidence.  
Id
. at 484, 486-87.  An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant’s complaint on appeal.  
Sims v. State
, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

To support Appellant’s contention that the evidence is legally and factually insufficient to sustain his aggravated robbery conviction, Appellant points out that, with the exception of Holloway’s and Richie’s testimonies, none of the other witnesses could identify him as an individual involved in the shooting.  Additionally, Wade’s testimony, regarding Appellant’s admission to shooting Cooper, was impeached and unreliable.  However, when reviewing legal and factual sufficiency of the evidence, we consider all of the evidence, including accomplice-witness testimony.

Richie testified that he and Appellant went to the drug house with the intention of committing a robbery, that he heard two gunshots, and that he saw Appellant pointing a gun at Cooper and demanding money.  Holloway testified that he drove Appellant and Richie to the house on Avenue J where the robbery occurred.  The non-accomplice evidence of Wade and Lacy discussed above corroborates Richie’s and Holloway’s testimonies.  While some witnesses testified to different versions regarding some of the events, the trial court was free to evaluate the credibility and demeanor of the witnesses.  
See Cain
, 958 S.W.2d at 407.

Based on the evidence and applying the appropriate standards of review, a reasonable trier of fact could have concluded beyond a reasonable doubt that Appellant committed the offense of aggravated robbery.  Furthermore, the trial court’s judgment was not so against the weight of the evidence as to be clearly wrong and unjust.  
See Johnson
, 23 S.W.3d at 6-7.  Accordingly, we hold that the evidence is legally and factually sufficient to support Appellant’s conviction for aggravated robbery.  We overrule Appellant’s first and third points.

Law of Parties

In his fourth point, Appellant contends that the State should have pled a parties theory in the indictment.  To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.  
Tex. R. App. P
. 33.1(a)(1); 
Mosley v. State
, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), 
cert. denied
, 526 U.S. 1070 (1999).  Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule.  
Tex. R. App. P
. 33.1(a)(2); 
Mendez v. State
, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

Appellant contends, for the first time on appeal, that the indictment failed to put him on notice as to the manner and means of criminal responsibility on which the state relied to establish Appellant’s culpability.  Because Appellant failed to timely object to the indictment, he has waived any error as to defects in the indictment.  
See
 
Tex. Code Crim. Proc. Ann
. art. 1.14(b) (Vernon Supp. 2004-05).  We overrule Appellant's fourth point.

Conclusion

Having overruled Appellant’s four points on appeal, we affirm the trial court’s judgment.

PER CURIAM

PANEL B:  HOLMAN, DAUPHINOT, and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  April 14, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
The record reveals that Appellant also goes by the nickname “Skeet.”

3:
Pat Henz, who was the crime scene officer, testified that blood samples were taken from the scene but that he did not know if those samples had ever been tested.

4:
However, according to Richie’s testimony, he had never been with Appellant at Wade’s house.

5:
Wade testified that Appellant did most of the talking but that Richie agreed with Appellant’s explanation of what happened, although he did not provide specific details.

6:
Wade’s testimony on direct and cross examination is unclear and contradictory as to how he knew Cooper was working at the drug house located on Avenue J.

7:
Vicki Duffy is the mother of Wade’s child.  Wade testified that Duffy had received information from Appellant’s girlfriend that there was a gun at Appellant’s house and that Appellant wanted him to look for it under the refrigerator at his house.  Wade stated that he went to Appellant’s house and looked under the refrigerator, where he claimed to have seen the handle of a small pistol.  However, Wade testified that he did not remove the gun from under the refrigerator.  Duffy testified that she never received any message regarding where the gun might be located and that she never told Wade to go look for the gun.

8:
Appellant’s brief asserts “[t]he Appellant should be granted a new trial because the greater weight and preponderance of the credible evidence favors acquittal so that the judgment finding him guilty of aggravated robbery is manifestly unjust.”  We liberally construe Appellant’s point as challenging the factual sufficiency of the evidence.  
See
 
Tex. R. App. P
. 38.9.