

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-13-00250-CR

---

GRAYLON TARAYE IVERY, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 8th District Court
Hopkins County, Texas
Trial Court No. 1323397

---

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

## MEMORANDUM OPINION

Graylon Taraye Ivery, convicted of selling less than one gram of cocaine[1] within 1,000 feet of a playground,[2] has filed an appeal, claiming insufficiency of the evidence and challenging the constitutionality of the portion of the law relating to the definition of a drug-free zone.

Ivery zeroes in on his claim concerning the sufficiency of the evidence to two points: (1) the evidence necessary to corroborate the testimony of a confidential informant who facilitated the drug sale and (2) the evidence that the drug transaction occurred in a drug-free zone (in this circumstance, within 1,000 feet of a playground). We overrule Ivery's claims as to the sufficiency of the evidence and Ivery's constitutional claim and affirm the trial court's judgment and sentence.

In evaluating legal sufficiency of the evidence, we review all of the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have determined that the essential elements of the charged offense had been proven beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of *Brooks*, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

---

[1]*See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2010).

[2]*See* TEX. HEALTH & SAFETY CODE ANN. § 481.134 (West Supp. 2013).

## I. Corroboration of Confidential Informant Testimony

Using a confidential informant, John Ellis, Sulphur Springs police arranged a purchase of crack cocaine from Ivery. In a case such as this, any testimony from the informant must be corroborated by other evidence tending to connect the defendant with the alleged offense. TEX. CODE CRIM. PROC. ANN. art. 38.141 (West 2005). We review confidential informant corroboration in the same manner and by the same measure as we would review the testimony from an accomplice witness. *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008). To corroborate Ellis' testimony,

> "[a]ll the law requires is that there be some [other] evidence which tends to connect the accused to the commission of the offense. While individually these circumstances might not be sufficient to corroborate the [confidential informant] testimony, taken together, rational jurors could conclude that this evidence sufficiently tended to connect appellant to the offense."

*Cantelon v. State*, 85 S.W.3d 457, 460–61 (Tex. App.—Austin 2002, no pet.) (quoting *Hernandez v. State*, 939 S.W.2d 173, 178–79 (Tex. Crim. App. 1997)). "To determine the sufficiency of the corroboration, we eliminate the testimony of the accomplice and ask whether other inculpatory evidence tends to connect the accused to the commission of the offense, even if it does not directly link the accused to the crime." *Id.* (citing *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997)). We must view the corroborating evidence in the light most favorable to the verdict. *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994) (reviewing sufficiency of accomplice witness testimony).

Two Sulphur Springs police officers met with Ellis before sending him to meet with Ivery. Sergeant Mark Estes, one of the police officers, searched Ellis and his car to ensure that

3

Ellis was not in possession of narcotics and then provided Ellis $100.00 cash, the bills having first been photocopied to document their serial numbers.[3] Estes and Lieutenant Harold McClure followed Ellis to a residence at 310 West Beckham Street in Sulphur Springs, where Ellis had arranged to meet Ivery. The policemen also equipped Ellis with a camera and recording device disguised as a simple wrist watch.[4] The officers watched Ellis enter the residence, and they monitored the audio and visual scenes (as well as they could given the limitations of the device) while Ellis was in the house with Ivery. The officers then observed Ellis leave the residence and followed him to a secure location. Once at the secure location, the policemen found that Ellis then possessed several rocks of crack cocaine.[5] This evidence tends to connect Ivery with the offense of delivery of a controlled substance, less than one gram. The corroborating evidence need not directly link the accused to commission of the offense, nor must it establish guilt beyond a reasonable doubt. *See Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex. Crim. App. 1996) (corroboration of accomplice).[6]

## II. Drug-Free Zone

The punishment ranges of many drug offenses are elevated if the offenses occur in drug-free zones; generally, these areas are 1,000-foot zones around schools, playgrounds, and parks.

---

[3]The cash used to facilitate the purchase was never recovered.

[4]The images provided by this device were of dubious quality. It produced low-quality video footage, and the frame of view was often not pointed at areas that provide satisfactory views.

[5]A chemist for the Texas Department of Public Safety analyzed the substance delivered by Ivery and concluded that it contained .72 grams of cocaine.

[6]Ivery points out that the video recording obtained from the watch/camera worn by Ellis fails to show any actual transfer of contraband. Because the corroboration statute only requires evidence tending to connect the accused with the crime, we find the evidence discussed above is sufficient to meet the law's requirement.

TEX. HEALTH & SAFETY CODE ANN. § 481.134. If Ivery's offense of delivery of less than one gram of cocaine, a state jail felony, was shown to have occurred in a drug-free zone, the offense would be punishable as a third degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.134(b).

The indictment alleged the delivery offense occurred "within 1,000 feet of a playground, to-wit: Pacific Park, located at the corners of Martin Luther King, Carter, Lamar, and Beckham Streets in Sulphur Springs, Texas."[7] The drug-free zone statute defines a playground as

any outdoor facility that is not on the premises of a school and that:

(A)     is intended for recreation;

(B)     is open to the public; and

(C)     contains three or more play stations intended for the recreation of children, such as slides, swing sets, and teeterboards.

TEX. HEALTH & SAFETY CODE ANN. § 481.134(a)(3). Under the measure commonly referred to as the "hypothetically correct jury charge," if the jury found that Ivery delivered less than one gram of cocaine and the jury also found that the delivery occurred in a drug-free zone (i.e., it found the delivery to have taken place within 1,000 feet of a playground), it should find Ivery guilty of the offense with which he was charged. Ivery's appellate challenge focuses on the use

---

[7]"[S]ufficiency of the evidence should be measured by the elements of the offense as defined by a hypothetically correct jury charge . . . ." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

5

of a map to establish the 1,000-foot proximity of the playground to the commission of the offense and further complains that there was no evidence the playground was open to the public.[8]

The State produced a Google map which contained a caption which clearly notes "478.30 feet" on it. The map notes a location—310 Beckham Street (the house in Sulphur Springs where Ellis purchased the drugs from Ivery). Estes and McClure said they followed Ellis to that address and saw Ellis first enter and then leave the house at that location. From the photocopy of the map, we see neither any reference to Pacific Park on the map nor any indication what the notation "478.30 feet" means.[9] Estes testified that he used the Google map to determine the distance from the house on Beckham Street to the park. Estes also said that he was familiar with the area and that the map was a fair and accurate representation of the area where Ivery was located when the drug sale was completed. The State then asked, "In combination with your personal knowledge of the area and your research, as we can see from State's Exhibit 3—the Google map—do you know how far away in feet that is? Can you read that?" Estes answered, "I can. 478.30 feet." This answer can be interpreted in two possible ways: Estes could have been simply reciting what he read on the map, or it could have been that by using both the map and his own knowledge of the area, he determined the distance between the park and the house where Ivery sold the drugs to be 478.30 feet. McClure's testimony was slightly more direct about the distance than the testimony of Estes. McClure stated unequivocally that he was familiar with the area and that Pacific Park was within 1,000 feet of 310 West Beckham Street.

---

[8]Ivery does not challenge the number of play stations at the park; Sergeant Estes stated that there were "five playground apparatuses" and described slides, climbing ropes, and a "see-saw" or "teeter-totter."

[9]The State failed to file a brief in this case.

6

This was evidence sufficient to allow a rational jury to conclude beyond a reasonable doubt that the drug sale occurred within 1,000 feet of a playground.[10]

As mentioned above, the statutory definition of a playground requires it to be open to the public. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.134(a)(3)(B). Although Ivery complains that there was no evidence that the playground was open to the public, that is incorrect. Estes testified that the park is open to the public. We overrule the second point of error.

### III.    Constitutionality of Drug-Free Zone Statute

In his final claim of error, Ivery argues that the statute which increases the severity of a crime or enhances the penalty attached to a crime if the crime is perpetrated within 1,000 feet of a drug-free zone[11] is unconstitutional because it lacks a more precise description of what constitutes the boundaries of a playground. He claims that because the statute does not specify what entails the boundaries of a playground, the law is so broad and vague on its face that an accused person is unable to properly defend against an allegation that it has been violated. Alternatively, Ivery claims the statute is unconstitutional as it is applied to him and his circumstance.[12]

---

[10]Much of Ivery's argument focuses on the lack of evidence of where the playground was situated in the park. We read the indictment's allegation to be that the park is the playground, and vice versa. The allegation is that the sale took place within 1,000 feet of a "playground, to-wit:  Pacific Park . . . . "  "To wit" means "that is to say." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1323 (11th ed. 2006). Without debating the priority of chicken versus egg, we read the indictment to allege that the offense occurred within the described perimeter of a playground and that the playground is called Pacific Park.

[11]*See* TEX. HEALTH & SAFETY CODE ANN. § 481.134.

[12]*See Gillenwaters v. State*, 205 S.W.3d 534, 536 nn.2–3 (Tex. Crim. App. 2006) (citing *Tex. Boll Weevil Eradication Found. v. Lewellen*, 952 S.W.2d 454, 461 n.5 (Tex. 1997)) (outlining constitutional challenges to statutes).

Both facial challenges and "as-applied" challenges to the constitutionality of statutes must be first presented to the trial court, lest any claim of error be forfeited. *See Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009); *see Reynolds v. State*, 423 S.W.3d 377, 383 (Tex. Crim. App. 2014). We have found no objection in the record of the trial court proceedings, nor has Ivery directed us to any trial objections on this subject. No error is preserved for our review.[13] We overrule Ivery's points of error.

We affirm the trial court's judgment and sentence.

Bailey C. Moseley
Justice

Date Submitted:     July 28, 2014
Date Decided:       August 12, 2014

Do Not Publish

---

[13]Additionally, facial challenges to the constitutionality of statutes are generally only sustained where the appellant can "demonstrate a substantial risk that application of the provision will lead to the suppression of speech." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998). Ivery has not explained how the First Amendment or free speech rights are implicated in the drug-free zone statute.

8