

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00011-CR

_____

TERRANCE DAVIS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 202nd District Court
Bowie County, Texas
Trial Court No. 14F0109-202

Before Morriss, C.J., Moseley and Carter,* JJ.
Memorandum Opinion by Chief Justice Morriss

_____

*Jack Carter, Justice, Retired, Sitting by Assignment

# MEMORANDUM OPINION

Calvin Whaley testified at Terrance Davis' Bowie County jury trial that he and Davis robbed a Texarkana E-Z Mart convenience store in early 2014 after an evening of drinking. As a result, Davis was convicted of aggravated robbery and sentenced to fifty-five years' imprisonment. On appeal, Davis argues that there was insufficient evidence corroborating Whaley's accomplice-witness testimony, that the trial court reversibly erred in its instruction on accomplice-witness testimony, and that the trial court erred in denying his motion for continuance based on his claim of prosecutorial misconduct. We affirm the trial court's judgment because (1) there was sufficient corroborating evidence, (2) the accomplice-witness instruction was correct, and (3) denying Davis' motion for continuance was not an abuse of discretion.

*(1)     There Was Sufficient Corroborating Evidence*

At trial, Darrin Conover, the assistant manager at the convenience store, testified that, around 3:00 a.m. in early 2014, a man wearing a hoodie came into the store, picked up a small piece of candy, and came to the cash register. A second man wearing a coat and jeans also entered the store. As the candy purchase was concluding, the first man pointed a gun at Conover and said he was going to rob him. Fearing for his life, Conover opened the cash register and got on the floor, as ordered by the men. Conover testified that approximately $35.00 and some cigarettes were taken by the men. He testified that the men seemed to be working together since they both ordered him to the floor and both grabbed money from the cash register. However, it was the first man with the hoodie that threatened Conover's life with a gun. Conover testified that he could only see the man's face from his nose down because of the hoodie. He also testified that, during

2

the police investigation, he attempted, but failed, to identify the gunman from six photographs, since he did not get a good enough look at the robbers' faces.

On cross-examination, Conover acknowledged that the photograph he identified for the police as the gunman was not Davis, even though Davis' photograph was included among the six photographs he was presented. He admitted that, when he identified the photograph of the other man as the gunman, he was certain that he was correct. He became uncertain that he had correctly identified the gunman only after meeting with the district attorney shortly before trial.

During Conover's examination, a composite video taken by the store's security cameras (the video) was shown to the jury. The video generally confirms the sequence of events as set forth in Conover's testimony. The faces of the two robbers cannot be clearly seen at any point. However, the video shows one man enter the store dressed in jeans and a dark hoodie. At times, the hoodie appears black and at other times, navy blue. This man eventually approached the cash register, made a purchase, then pulled out a pistol and pointed it at Conover. As this man was leaving the store, several light-colored patches could be seen on the rear of his dark jeans. A second man entered about four seconds after the first, dressed in jeans and a jacket. When the cash register is opened, both men can be seen taking money out of it. The video recording was also played during Whaley's examination. Whaley testified that he was the second man shown entering the store and that the man pulling the gun on Conover was Davis. He admitted taking money from the register and grabbing cigarettes during the robbery, but denied possessing a weapon that night. He told the jury that he pled guilty to aggravated robbery for what he did that night and that he agreed to testify on behalf of the State in return for a twenty-two-year sentence. He identified

3

Davis, whom he knows as "T," as the person who committed this crime with him. Whaley testified that he saw Davis earlier in the evening at a friend's house and that Davis had invited him to hang out with him that evening. Davis picked him up, and they went to Davis' uncle Jack's house, then to several friends' houses, where they drank alcohol and then went to a local bar until approximately 2:30 a.m. Sometime during the evening, Davis told him that he needed to find a way to come up with $350.00 and that he "was looking to hit a lick."[1] Whaley testified that, after they left the bar, Davis drove past the E-Z Mart, slowed down, and looked at the store. Davis then said that he "was going to get their a--," which Whaley took to mean he was going to rob the store. They drove past the E-Z Mart, parked by some nearby apartments, and walked to the store. Whaley testified that he turned his jacket inside out and that Davis pulled his hood down over his head to conceal their identities. He said Davis entered the store, then he followed. Davis made a small purchase, then pulled a gun and told the clerk something like "get back" and "don't make me hurt you." After taking money and some cigarettes, they left the store and drove to "uncle Jack's" house where Davis left him for several hours. Whaley testified that he did not see Davis again until the next Friday when Davis dropped by and told him that the police were looking for Whaley for the robbery. Whaley was arrested the next week and agreed to talk with the police.

Spencer Price, a crime scene technician for the Texarkana Police Department, collected evidence and photographed the crime scene. He collected and fingerprinted several packages of cigarettes found outside the store and leading to an apartment complex. One of the packages contained fingerprints that he was able to match to Whaley. He also testified that he photographed

---

[1]Whaley explained that "hit a lick" means to get money, including robbery or aggravated robbery.

Davis in the Criminal Investigation Division room at the police department. He identified photographs of Davis' right and left rear jeans pockets, the back of his jeans, and the tennis shoes he was wearing at the time. Price testified that he had reviewed the security camera video and that, in his opinion, the tennis shoes Davis was wearing and the design on his back pockets were similar and consistent with the ones the gunman was wearing in the video. On cross-examination, Price acknowledged that there are lots of white tennis shoes and blue jeans in Texarkana and that the video does not show the shoes and jeans close enough to see their brands.

For nine years, Toni Rutledge was in a relationship with Davis, the father of her two daughters. She testified that she has never met Whaley. She was never questioned by the police. She said she did not want to testify, but she was served with a subpoena requiring her to testify. Rutledge testified that she is familiar with Davis' voice and has heard him reflecting a wide range of emotions. After the video was played for her, she said she recognized the voice of the gunman as belonging to Davis. She also testified that Davis is left handed and that the gunman in the video is holding the gun with his left hand. Rutledge also recognized the hoodie and jeans the gunman on the video was wearing. She identified white areas on the back of the gunman's jeans shown in a still photograph taken from the video and stated that they used to be black. She testified that she helped Davis tear the black material off because it became loose after washing. She also identified the same area in one of the photographs of the rear of Davis' jeans. She pointed out in that photograph the black material that remained around the rivets and testified that these white patches were a unique characteristic of his jeans. Rutledge also testified that she saw Davis around 2:00 p.m. the day before the robbery wearing a blue hoodie and stated it was the same as the one shown

5

in the still photograph taken from the video. When she saw him around 8:00 a.m. the day of the robbery, he was still wearing the blue hoodie. She did not remember what jeans he was wearing. She testified that she was too mad to remember since he had not come home that night. She also testified that she was unable to see Davis' face on the video, but she recognized his voice, his clothes, and the way he walks, making her certain that it was him in the video.

On cross-examination, Rutledge denied that she was still mad at Davis. She admitted that she had gone to the district attorney's office voluntarily to talk with them, but had refused to talk with Davis' investigator. She testified that the district attorney had shown her the video and asked if she could identify Davis. She also agreed that the photograph of the rear of Davis' jeans shows only two white spots.

Brad Thacker, a detective for the Texarkana Police Department, testified that, when Whaley was arrested January 28, he interviewed Whaley. Whaley identified his accomplice in the robbery as a male he knew as "T," described the accomplice to be thirty-eight to forty-two years old and heavyset, described the vehicle he drove and its interior, and provided information on Davis' employment. Thacker testified that, based on this information, he determined that "T" was Davis. He testified that he compiled a photo lineup based on this description containing five photos of men having similar characteristics, such as hairstyle and face shape, as the suspect. He stated that, in his experience, it is not unusual for the victim to fail to make an identification or to choose the wrong person in the lineup. He explained that a weapon being involved, the victim being made to lie on the ground, the short amount of time involved in the incident, and the suspects covering their faces are all reasons someone might not be able to identify the suspect. After viewing the

6

video, Thacker testified that it showed the gunman being careful not to leave his fingerprints on the counter or the door. He also testified that, when arrested, Davis was driving a vehicle that matched the description given by Whaley. After examining Davis' jeans, Thacker testified that there were two light-colored patches on the rear pockets and a light-colored tag. He also testified that the jeans Davis was wearing were similar and consistent with the pants worn by the gunman in the video and still photo. Thacker stated that, in his interview, Davis initially denied knowing Whaley, but then acknowledged knowing him when Thacker used his street name, "C-Note." In his interview, Davis repeated a phrase used by the gunman on the video, and this portion of the interview was played for the jury. Thacker expressed his opinion that Davis' voice matched the voice on the video.

On cross-examination, Thacker acknowledged that, on the night of the robbery, Conover described the gunman as being five feet, eight inches tall, weighing two hundred pounds, being twenty-five to thirty years old, and having broad shoulders. He also acknowledged that there were discrepancies in the height, weight, and age between the descriptions given by Conover and Whaley. He also admitted that he never investigated the person in the photograph that Conover initially identified. However, he explained that the person in that photograph was in the control position and that if someone picks the photograph in the control position, then they know it is a mistake.[2] Thacker also testified that Conover had said that it looked like the gunman had a scar under his eye, but that Davis does not have any scars under his eye.

---

[2]Thacker explained that the photograph in the number one position, which Conover chose, is the control, and that their rules do not allow them to put the suspect's photograph in the number one position.

Article 38.14 of the Texas Code of Criminal Procedure provides, "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). To evaluate the sufficiency of corroboration evidence, we eliminate the accomplice-witness testimony from our consideration and examine the non-accomplice evidence "to ascertain if there is evidence which tends to connect the accused with the commission of the offense." *Hernandez v. State*, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997) (citing *Reed v. State*, 744 S.W.2d 112, 125 (Tex. Crim. App. 1988)); *Burks v. State*, 876 S.W.2d 877, 887 (Tex. Crim. App. 1994); *Hall v. State*, 161 S.W.3d 142, 150 (Tex. App.—Texarkana 2005, pet. ref'd). The non-accomplice evidence need not establish guilt beyond a reasonable doubt or directly link the defendant to the crime. *Hernandez*, 939 S.W.2d at 176; *Gill v. State*, 873 S.W.2d 45, 48 (Tex. Crim. App. 1994). Rather, "[t]he accomplice witness rule is satisfied if there is *some* non-accomplice evidence which *tends* to connect the accused to the commission of the offense alleged in the indictment." *Hernandez*, 939 S.W.2d at 176 (citing *Gill*, 873 S.W.2d at 48 (citing *Gosch v. State*, 829 S.W.2d 775, 777 (Tex. Crim. App. 1991)); *Cox v. State*, 830 S.W.2d 609, 611 (Tex. Crim. App. 1992)).

The question at hand is whether the evidence is sufficient to corroborate Whaley's accomplice-witness testimony. Although he acknowledges some of the testimony given by other witnesses that tends to connect him to the robbery, Davis attacks the credibility of those witnesses. However, the jury "is the sole judge of the credibility of the witnesses and the weight of the evidence." *Hartsfield v. State*, 305 S.W.3d 859, 869 (Tex. App.—Texarkana 2010, pet. ref'd)

8

(citing *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999)). Further, we give "'almost complete deference to a jury's decision when that decision is based on an evaluation of credibility.'" *Id.* (quoting *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008)). In addition, as the State points out, in reviewing the non-accomplice testimony and corroborating evidence, we do so in the light most favorable to the jury's verdict. *Gill*, 873 S.W.2d at 48; *Ivery v. State*, No. 06-13-00250-CR, 2014 WL 3906192, at *1 (Tex. App.—Texarkana Aug. 12, 2014, no pet.) (mem. op., not designated for publication). When viewed in that light, we find the corroborating evidence sufficient to connect Davis to the robbery.

Viewed in the light most favorable to the jury verdict, the non-accomplice evidence in this case established (A) that two people committed a theft of property from the E-Z Mart on January 17, 2014, (B) that one of the perpetrators threatened Conover with a deadly weapon, i.e., a firearm, placing him in fear of imminent bodily injury or death, (C) that the gunman used his left hand to wield the firearm, (D) that Davis is left handed, (E) that the gunman wore a dark hoodie, (F) that Davis owned a blue hoodie and was wearing it several hours before and several hours after the robbery, (G) that the gunman wore jeans with two unique white patches on the rear, (H) that Davis owned jeans with similar unique white patches on their rear, (I) that Rutledge and Thacker identified Davis as the gunman in the video based on their familiarity with his voice, and (J) that Rutledge identified Davis as the gunman based on her familiarity with his unique clothing and walk. In addition, the jury had the opportunity to compare the video and the still photo taken from the video with the photographs of Davis' clothing, his jeans, and the audio recording of his

9

interview.  We find that the non-accomplice evidence connects Davis with the commission of the aggravated robbery.  Therefore, we overrule this point of error.

*(2)    The Accomplice-Witness Instruction Was Correct*

Davis also argues that the trial court's jury instruction regarding accomplice-witness testimony was insufficient.  After providing the jury with the definition of an accomplice, the trial court gave the following complained-of instruction:

> The witness, Calvin Whaley, is an accomplice, if an offense was committed, and you cannot convict the defendant on his testimony unless you first believe that his testimony is true and shows that the defendant is guilty as charged, and then you cannot convict the defendant on said testimony unless you further believe that there is other testimony in the case, outside the evidence of Calvin Whaley tending to connect the defendant with the offense committed, if you find that an offense was committed, and the corroboration is not sufficient if it merely shows the commission of the offense, but it must also tend to connect the defendant with its commission, and then from all of the evidence you must believe beyond a reasonable doubt that the defendant is guilty of the offense charged against him.

Davis argues that the instruction improperly limited the jury's consideration to "other testimony," specifically to Rutledge's testimony, and that the jury was thereby prevented from considering other evidence that called into question the validity and credibility of her testimony.[3]  The State argues that, in addition to there being testimony from other witnesses that tended to connect Davis to the commission of the aggravated robbery, the instruction meets the requirements of an accomplice-witness instruction as set forth by the Texas Court of Criminal Appeals.  We agree.[4]

---

[3]Although not entirely clear, it appears that Davis' complaint is based in the trial court's use of the phrase "other *testimony* . . . tending to connect the defendant," rather than using "other *evidence* . . . tending to connect the defendant," as is used in Article 38.14.  *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (emphasis added).

[4]We review an alleged error in an accomplice-witness instruction under the procedural framework of *Almanza*. *Zamora v. State*, 411 S.W.3d 504, 512 (Tex. Crim. App. 2013); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).  Under this framework, we employ a two-step process in our review of the alleged

10

Whaley participated in the robbery of the convenience store and had pled guilty to the crime of aggravated robbery. Therefore, he was an accomplice as a matter of law. *Hall*, 161 S.W.3d at 149. "If a witness is an accomplice as a matter of law, the trial court is required to provide an accomplice-witness instruction to the jury." *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006). The instruction must explain the definition of an accomplice and inform the jury that the witness is an accomplice as a matter of law. *Zamora*, 411 S.W.3d at 510. It must also instruct the jury regarding the requirements of Article 38.14. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14; *Holladay v. State*, 709 S.W.2d 194, 201–02 (Tex. Crim. App. 1986). Davis does not challenge the trial court's definition of an accomplice. He also concedes that the trial court's instruction properly identified Whaley as an accomplice as a matter of law. Therefore, we consider only whether the instruction was proper and sufficient under Article 38.14.

In examining the instruction, we fail to see any basis for Davis' assertion that it limits the jury's consideration of corroborating evidence to Rutledge's testimony, since it never mentions her name. As previously discussed, there is testimony from other non-accomplice witnesses tending to connect Davis to the commission of the offense, and there is no indication that the jury failed to consider this testimony. We also see no basis for Davis' contention that the instruction prevented the jury from considering other evidence that challenged the validity and credibility of Rutledge's, or any other non-accomplice witness' testimony. As seen above, trial counsel for

---

error. *See Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). "Initially, we determine whether error occurred and then evaluate whether sufficient harm resulted from the error to require reversal." *Wilson v. State*, 391 S.W.3d 131, 138 (Tex. App.—Texarkana 2012, no pet.) (citing *Abdnor*, 871 S.W.2d at 731–32). In examining the charge for possible error, appellate courts "must examine the charge as a whole instead of a series of isolated and unrelated statements." *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995). Only if we find error do we analyze that error for harm. *See Abnor*, 871 S.W.2d at 731. In this case, we find that no error occurred.

Davis ably attacked the credibility of Rutledge and other witnesses on cross-examination. The "other testimony" would necessarily include the testimony of other witnesses, as well as each witness' cross-examination testimony. Further, the jury charge instructed the jury that "you are the exclusive judges of the facts proved, the credibility of the witnesses, and the weight to be given their testimony" and that "you may believe all, any part, or none of the testimony of any witness you have heard in this case." Again, there is no indication that the jury failed to follow the trial court's instruction. Finally, Davis spent almost one-half of his final argument attacking the credibility of Rutledge, Conover, Price, and Thacker. We find that the instruction did not improperly limit the jury's consideration of non-accomplice evidence.

Additionally, although Article 38.14 uses the phrase "other evidence tending to connect the defendant," the trial court's use of "other testimony . . . tending to connect the defendant" is not erroneous. The Texas Court of Criminal Appeals has held that an instruction satisfies the requirements of Article 38.14 if it instructs the jury that it cannot convict the defendant of the charged offense unless it found:

> (1) that the offense itself had been committed; (2) that the accomplice witness['] testimony was truthful; (3) that [the accomplice witness's] testimony itself showed that the [defendant] was guilty of the offense [charged]; (4) that there was other evidence, outside of [the accomplice witness's] testimony, that tended to connect the [defendant] to the commission of the offense [charged]; and (5) from all of the evidence, including the accomplice witness' testimony, it believed that the [defendant] was guilty beyond a reasonable doubt of committing the offense of capital murder.

*Holladay*, 709 S.W.2d at 201–02. In considering an accomplice-witness instruction identical to the one given in this case, the Court held that it "was more than adequate to satisfy the requirements of the provisions of Art. 38.14." *Id*. at 197, 202; *see also Camacho v. State*, 864 S.W.2d 524, 535,

12

n.4 (Tex. Crim. App. 1993) (instruction identical to that given in this case stated accomplice-witness rule correctly); *Tuma v. State*, No. 04-00-00522-CR, 2002 WL 21962, at *1–2 (Tex. App.—San Antonio Jan. 9, 2002, no pet.) (not designated for publication) (instruction identical to that given in this case sufficient under *Holladay* standard).  Likewise, we find that the trial court's instruction in this case was sufficient to satisfy the requirements of Article 38.14.

Because the instruction did not improperly limit the juror's consideration of non-accomplice evidence and was sufficient under Article 38.14, we overrule this point of error.

*(3)     Denying Davis' Motion for Continuance Was Not an Abuse of Discretion*

Davis also asserts that the trial court erred in denying his motion for continuance filed after trial began, based on the State's last-minute disclosure that Rutledge would identify Davis' voice heard on the video.  An understanding of this point of error requires us to briefly set out the relevant procedural history.

After his arrest, Davis executed an affidavit of indigence and had trial counsel appointed no later than February 4, 2014.  On February 20, 2014, Davis filed a pro se motion for discovery, although the certificate does not indicate when, or if, the same was served on the State.  This motion included a request for the names and addresses of all witnesses the State intended to call at trial.  On October 20, 2014, Davis served his request that the State provide notice at least ten days before trial pursuant to Rule 404(b)[5] of its intent to introduce evidence in its case-in-chief of

---

[5]*See* TEX. R. EVID. 404(b).  The Texas Rules of Evidence were amended by orders of the Texas Supreme Court and Court of Criminal Appeals, effective April 1, 2015.  The Rules of Evidence quoted in this opinion are the Rules in effect at the time of the trial of this case.  To facilitate access to the text of the Rules in effect at the time of trial, we note that those Rules were originally published in volume sixty of the Texas Bar Journal, beginning on page 1129. *See* 60 TEX. B.J. 1129 (1997).

other crimes, wrongs, and acts. Several months before trial, Davis received the State's witness list, which disclosed Rutledge's name, address, and telephone number and disclosed that she was Davis' girlfriend.[6] On December 2, Davis served his request for compliance with Article 39.14 of the Texas Code of Criminal Procedure, requesting the State to produce for copying and inspection those documents allowed under Article 39.14, to disclose any exculpatory, impeachment, or mitigating evidence, to identify any expert witnesses, and to disclose the criminal history of each person it may call as a witness.[7] The next day, on December 3, Davis served another request for compliance with Article 39.14 of the Texas Code of Criminal Procedure, requesting the same discovery as the previous request for compliance, but additionally requesting "the name, address and telephone number of any person or persons who may attempt to testify to an in-court or out of court [sic] identification of [Davis] and the basis for such opinion."[8] This request asked the State to respond within five days of the request.

On December 9, shortly before jury selection, the trial court heard Davis' motion in limine. On December 10, before trial began, the trial court heard Davis' motion to suppress identification testimony. In his motions, Davis alleged that the State informed him that Rutledge would be an identification witness shortly before jury selection, which the State does not dispute. In both of the hearings, Davis' trial counsel argued that the State had identified Rutledge in response to his

---

[6]The witness list is undated, but the State represented that it had provided the witness list several months before trial, which Davis did not dispute. The witness list also included the names, addresses, and telephone numbers of Thacker and Price, who also provided identification testimony.

[7]All of this requested discovery is within the scope of permitted discovery addressed in Article 39.14. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14 (West Supp. 2015).

[8]This additional request is not addressed under Article 39.14. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14.

Rule 404(b) request and stated that she would testify regarding an extraneous offense. In response, the State pointed out that it had separately disclosed Rutledge as a witness and identified her as Davis' girlfriend and argued that, since Davis knew she was not an eyewitness, he must have known she would give identification testimony. It also argued that, even though Davis had the witness list for some time, he never requested that the State disclose the nature of Rutledge's anticipated testimony. The trial court carried both motions. After Conover testified, and before any of the identification witnesses testified, the trial court denied Davis' motion to suppress. The court found that Rutledge had been identified as a witness and that Davis would have the opportunity to challenge her qualifications, motives, and credibility. Davis then filed his motion for continuance with the court, asking for a two-week continuance, and contending that, had he known Rutledge would be giving voice identification, he would have retained a consulting expert to analyze the audio. The State argued that it had disclosed Rutledge as a witness several months before trial and that Davis waited until the last moment to attempt to speak to her. Trial counsel for Davis admitted that he had not contacted Rutledge until the day before, but she had refused to talk with him.[9] The trial court denied the motion for continuance.

In this Court, Davis challenges only the denial of his motion for continuance. In his brief, he argues that the State deceived him regarding the nature of Rutledge's testimony and that its last-hour disclosure of her anticipated identification testimony both surprised and prejudiced him. The State denies any deception and argues that it never indicated to Davis that Rutledge would only be

---

[9]Davis also stated the telephone number was not a working number, but the State represented that it was the number provided by the detectives on the case.

15

testifying to the extraneous offense. Further, it argues that, since she was also identified as his girlfriend and as a witness for the State, Davis cannot claim surprise. The State also argues that Davis should have anticipated her testimony since their relationship would give her sufficient knowledge to identify him.

Article 29.13 of the Texas Code of Criminal Procedure provides:

> A continuance or postponement may be granted on the motion of the State or defendant after the trial has begun, when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had.

TEX. CODE CRIM. PROC. ANN. art. 29.13 (West 2006). "A motion for continuance on the ground of surprise is addressed to the sound discretion of the trial court, and the failure to grant such a motion is not error absent an abuse of discretion." *Jones v. State*, 501 S.W.2d 677, 678 (Tex. Crim. App. 1973); *see Barney v. State*, 698 S.W.2d 114, 127 (Tex. Crim. App. 1985). Article 29.13 requires that the occurrence causing the claimed surprise could not have been anticipated by an attorney exercising reasonable diligence. TEX. CODE CRIM. PROC. ANN. art. 29.13; *Jones*, 501 S.W.2d at 678; *Ortiz v. State*, 825 S.W.2d 537, 539–40 (Tex. App.—El Paso 1992, no pet.). In this case, it is undisputed that the State disclosed several months before trial that it would call Rutledge, yet Davis served no discovery on the State requesting the substance of her anticipated testimony. Further, Davis apparently made no attempt to contact Rutledge until the day of jury selection. Davis provided no explanation for this lack of diligence. While it is undisputed that Rutledge was also disclosed as an extraneous-offense witness in response to Davis' request for notice under Rule 404(b), Davis failed to produce any evidence that the State represented that this

16

would be the only area of her testimony.  Further, the State's failure to respond to Davis' December 3 request for disclosure of identification witnesses does not excuse his lack of diligence, particularly since the State's disclosure was due only one day before it made the disclosure. Finally, Article 29.13 requires that the "unexpected occurrence" arise "since the trial began."  TEX. CODE CRIM. PROC. ANN. art. 29.13.   Davis knew that Rutledge would provide identification testimony before the trial began.  Since Davis did not show that Rutledge's identification testimony could not have been anticipated by exercising reasonable diligence, and since there was no unexpected occurrence shown since the trial began, we find no abuse of discretion in the denial of the motion for continuance.  We overrule this point of error.

We affirm the judgment of the trial court.


Josh R. Morriss III
Chief Justice


Date Submitted:      October 22, 2015
Date Decided:       December 16, 2015

Do Not Publish